(No. 11807.—Judgment affirmed.)

MICHAEL J. KENNA, Defendant in Error, *vs.* THE CALUMET, HAMMOND AND SOUTHEASTERN RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed June 20, 1918—Leave to file petition for rehearing denied October 2, 1918.*

1. CARRIERS—*who is a common carrier.* A common carrier is one who undertakes for hire to transport from place to place the goods of such as choose to employ him.

2. SAME—*a railroad company is a common carrier.* A railroad corporation exercising all of its franchises is a common carrier, and the fact that its facilities are limited in the beginning, so as to enable it to serve only a few or only a single customer, does not change the character of the corporation; nor does the fact that it never extends its facilities so as to render more general service to the public.

3. SAME—*a railroad company is a quasi public corporation.* A corporation organized under the general Railroad act is not a mere private corporation, but its franchise and all its property are affected with a public interest, and it is a *quasi* public corporation.

4. SAME—*railroad corporation cannot be organized for private transportation.* A corporation cannot be organized under the general Railroad act for any purpose other than the transportation of goods and persons for the public, and it cannot be organized for the purpose of private transportation.

5. SAME—*when corporation operating system of internal trackage is a common carrier.* A system of internal trackage constructed and operated by an industrial corporation for its own business is a plant facility which does not make the corporation a common carrier, but where the system is operated by an independent corporation organized under the general Railroad act, which, in addition to the service rendered in the operation of the plant, also delivers

to connecting lines the product of the plant consigned to customers and receives from such lines and brings in material required by the plant, the railroad corporation is a common carrier.

6. SAME—*the Federal Safety Appliance act excludes the application of the Workmen's Compensation act—inter-State commerce.* The Federal Safety Appliance act applies to an employee of an inter-State railroad though he is not engaged in inter-State commerce, and excludes the application of the Workmen's Compensation act in all cases in which the former act is applicable, as the Compensation act would substitute not only a different remedy for the employee but also a different thing for him to recover, the right of recovery under the Federal act being for compensatory damages for the loss sustained and not for a sum based on wages earned.

7. TRIAL—*when defendant cannot object that plaintiff's counsel added personal opinion to argument.* The personal opinion of counsel and the weight of his professional judgment are not proper to be considered by the jury in arriving at their verdict, which must be based on the evidence and the instructions, but an expression of opinion by plaintiff's counsel, brought about by an improper statement of opinion by defendant's counsel, cannot be complained of.

8. SAME—*when reference to plaintiff as "this one-armed man" is not prejudicial.* Where the plaintiff in a personal injury suit is present during his counsel's argument, so that the jury can see that his hand has been amputated three inches above the wrist as the result of his injury, the defendant is not prejudiced by plaintiff's counsel alluding to his client as "this one-armed man."

9. EVIDENCE—*right to cross-examine expert witness to test his knowledge and fairness.* Where an expert in the manufacture of an automatic car coupler has testified, in answer to a hypothetical question based on assumed conditions of the coupler, that certain results would follow, opposing counsel have the right, on cross-examination, to vary the hypothesis and obtain his opinion as to the results which would follow under the changed conditions.

10. INSTRUCTIONS—*when instructions setting out sections of the statute are not misleading.* In an action based upon the Federal Safety Appliance and the Employers' Liability acts, instructions setting out the sections of the statute applicable to the case are not misleading, where the instructions do not purport to direct a verdict and where other instructions fully inform the jury as to the application of the rules of law established by such statutes.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

F. J. CANTY, and P. L. McARDLE, (RYAN, CONDON & LIVINGSTON, of counsel,) for plaintiff in error.

JAMES C. McSHANE, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Michael J. Kenna, a switchman in the employ of the Calumet, Hammond and Southeastern Railroad Company, recovered a judgment for $10,000 in the circuit court of Cook county for the loss of his hand by being crushed between two cars on the tracks of the company within the plant of the By-Products Coke Corporation. The railroad company appealed to the Appellate Court, where the judgment was affirmed, and the record has been brought before us for review by writ of *certiorari*.

The case was submitted to the jury on two counts, the first of which charged the defendant with a violation of the Federal Safety Appliance act in switching and using in inter-State commerce a car equipped with an automatic coupler of such defective construction and condition that it could not be coupled from the side without the necessity of a man going between the cars. The second count charged that the plaintiff's injury was caused by the conductor's negligence in causing another car to be run against standing cars while the plaintiff was between two of them, and is founded on the Federal Employers' Liability act. Both counts allege that the defendant was a common carrier and engaged in inter-State commerce. This was an allegation which was essential for the plaintiff to sustain by the evidence, and the plaintiff in error insists that he did not do this. At the conclusion of all the evidence the plaintiff in error asked for an instruction finding for the defendant, which was refused, and the court, among other instructions, gave to the jury one that the defendant was a common carrier by railroad both before and at the time of the plaintiff's injuries.

The plaintiff in error was organized under the general Railroad act to construct a railroad commencing at a point in Chicago, in Cook county, north of Lake Calumet, running thence southerly along a line east of Lake Calumet, thence southeasterly to a line between the States of Illinois and Indiana, and also commencing at some point on the line just described east of Lake Calumet and running thence northeasterly across the Calumet river to the shore of Lake Michigan. The only railroad which the plaintiff in error operated consisted of a network of switch tracks within the By-Products Coke Corporation's plant. There were about five miles of these tracks. They were of standard gauge, and the company owned three locomotives, which were operated each with a crew of five men. These tracks were included within a fence enclosing the plant of the By-Products Coke Corporation and connected with a delivery track of the New York, Chicago and St. Louis railroad called the inner belt, within the enclosure, and with a delivery track of the Belt Railroad of Chicago just outside the fence and across a street. It does not appear from the evidence whether this connecting track crossing the street belonged to the plaintiff in error or the Belt railroad. The only business of the plaintiff in error consisted in switching cars for the coke corporation between the tracks within the plant and the two belt railroads, and it switched all cars received or shipped by that corporation. Its engines never went beyond its own tracks and the delivery tracks. The only access to its tracks was over the property of the By-Products Coke Corporation. The plaintiff in error received about one hundred cars a day coming from and going to places in different States. It received them from and delivered them to the belt railroads on their delivery tracks. It served no other purpose or corporation, and from the situation of its tracks it was not possible for it to do so or for any person to have any access to its tracks for any other purpose. It was physically impossible for it to accept cars for de-

livery except to or from the coke corporation. The plaintiff in error contends that it is not a common carrier but a mere plant facility of the coke corporation, incapable of serving the general public on account of the location of its lines within the premises of that company.

A common carrier is one who undertakes for hire to transport from place to place the goods of such as choose to employ him. Railroad companies are under obligation to receive and transport all goods which may be offered to them for that purpose, though they are not bound to receive goods at places on their line where they have no facilities for doing so. A railroad corporation exercising all its franchises is a common carrier. The law authorizes the incorporation of railroad companies for no other purpose than the carriage of goods and passengers. Their other powers are all incidental to this purpose. They are not mere private corporations, but their franchises, together with all their other property, is affected with a public interest and they are *quasi*-public corporations. Railroad companies, while organized as private investments for the profit of their shareholders, assume certain obligations to the public, among which is the devotion of their property to the use of the public. Because of their public character they are authorized to exercise a part of the sovereign power of the State,—that is, the power of eminent domain, without which no railroad corporation can be organized under the statute. A railroad corporation, therefore, cannot be organized for any other purpose than the transportation of goods and persons for the public. It cannot be organized for the purpose of private transportation. When it engages in the business of transportation it does so only by virtue of its charter, by reason of the fact that it is authorized, as a common carrier, to engage in that business. The fact that its facilities are limited in the beginning so as to enable it to serve only a few or only a single customer does not change the character of the corporation, nor does the fact

284 – 20

that it never extends its facilities so as to render more general service to the public. It is the right of the public to use the road and demand service, and not the extent of the business, which determines its character. In fact, the services rendered by the plaintiff in error to its single customer were those of a common carrier. Through its connections with the belt lines it received, and it was under obligation to receive, cars consigned from four different railroads by anyone desiring to ship to the By-Products Coke Corporation from the State of Illinois and other States, transported them within the plant of the coke corporation and there delivered them to the consignee, receiving pay for this service as a part of the general freight rate paid by the shipper for the whole carriage, from its beginning to delivery to the consignee. The plaintiff in error also received from the coke corporation, within its plant, for transportation, cars intended for consignees in various places in the State of Illinois and other States, transported them to the delivery tracks of the belt lines and there delivered them to the connecting carriers for transportation to the consignees. The plaintiff in error was under obligation to deliver these cars to the connecting carriers and the connecting carriers were bound to receive and transport them. Neither the ownership of the stock of the plaintiff in error nor the contract under which the railroad was constructed and operated appears in the record, but whatever these were, the plaintiff in error is not the coke corporation but a different and independent corporation, which might have issued a through bill of lading for the transportation of these cars. In fact, at the time of the injury to the defendant in error it did receive for its pay a part of the through freight rate, though subsequently it was not allowed to make any charge against the connecting carrier for freight going outside the State.

In *Devine* v. *Chicago and Calumet River Railroad Co.* 259 Ill. 449, the defendant's railroad was of the same character as that of the plaintiff in error, consisting of a series

of tracks connecting the buildings of the Western Steel Car and Foundry Company with the tracks of railroad companies outside of the grounds of the car and foundry company. The tracks were owned by the car and foundry company and were operated by the Chicago and Calumet River Railroad Company under a lease, the railroad company doing the same kind of service as the plaintiff in error in this case. A switchman in the employ of the railroad company was killed and his administrator sued the company, charging a violation of the Federal Safety Appliance act. A recovery was sustained, the court holding that the railroad company was engaged in inter-State commerce, assuming the apparent fact that it was a common carrier and amenable to the Federal Safety Appliance act.

In the case of *Koelle* v. *Knecht,* 99 Ill. 396, cited by the plaintiff in error, the private switch in question was not owned by the railroad company or operated by it as a part of its railroad but was constructed upon the grounds of individual owners for their private use. It was held that an owner who had granted a right of way for the switch track over his land had no right to use it over the land of another owner lying between the first owner's land and the railroad with which the switch was connected, and that the constitutional provision declaring all railroads to be public highways, free to all persons for the transportation of their persons or property, did not refer to private structures built by individuals on their own lands and used to subserve their individual and private interests. The track involved in the case of *Sholl Bros.* v. *Peoria and Pekin Union Railway Co.* 276 Ill. 267, was of the same character.

A system of internal trackage constructed and operated by an industrial corporation to meet the necessities of its business in the processes of manufacture may be regarded as a plant facility and does not make the corporation a common carrier. Where, however, the system is operated by an independent corporation organized as a common carrier,

which, in addition to the service rendered in the industrial operation of the plant, also engages in the transportation in commerce of the product of the plant to customers and of the material required by the plant in the conduct of its business from all shippers to the plant, such additional service is that of a common carrier. The fact that under its discretionary power over joint rates the Inter-State Commerce Commission may have refused to allow the company to participate in the through rate because such participation would create an unjust discrimination does not establish that the company is not a common carrier within the meaning of the Safety Appliance act. Under the evidence the plaintiff in error was a common carrier and the court properly so instructed the jury.

The plaintiff in error filed a special plea alleging that both the plaintiff and the defendant were subject to the Workmen's Compensation act, and showed that the plaintiff in error had accepted the provisions of the act and that the defendant in error had not declined them. It is insisted that the compensation provided by the Workmen's Compensation act was the defendant in error's exclusive remedy. On the other hand, it is contended that the Federal Safety Appliance act excludes the application of the Workmen's Compensation act. It is conceded that the Federal Employers' Liability act excludes the application of the Workmen's Compensation act in all cases in which the former act is applicable. (*Staley* v. *Illinois Central Railroad Co.* 268 Ill. 356; *New York Central Railroad Co.* v. *Winfield,* 244 U. S. 147.) The Safety Appliance act is equally exclusive. In *Texas and Pacific Railway Co.* v. *Rigsby,* 241 U. S. 33, and *San Antonio and Aransas Pass Railway Co.* v. *Wagner,* id. 476, it was held that a violation of the Safety Appliance act gave an injured employee a right of action even though he was not at the time of the injury engaged in inter-State commerce. In the first case cited it was said that "the inference of a private right of action in the present instance

is rendered irresistible by the provision of section 8 of the act of 1893 that an employee injured by any car, etc., in use contrary to the act shall not be deemed to have assumed the risk and by the language above cited from the proviso in section 4 of the 1910 act." The proviso referred to relieved carriers from the statutory penalties while hauling a car to the nearest available point for repairs, but expressly declared that it should not be construed to relieve in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in connection with the movement of such car with equipment which is defective or insecure or not maintained in accordance with the requirements of the act. It was further said in that case: "Congress having entered this field of regulation, it follows from the paramount character of its authority that State regulation of the subject matter is excluded. (*Southern Railroad Co.* v. *Railroad Com.* 236 U. S. 439; 59 L. ed. 661; 35 Sup. Ct. Rep. 304.) Without the express leave of Congress it is not possible, while the Federal legislation stands, for the States to make or enforce inconsistent laws giving redress for injuries to workmen or travelers occasioned by the absence or insecurity of such safety devices, any more than laws prescribing the character of the appliances that shall be maintained or imposing penalties for failure to maintain them; for the consequences that follow a breach of the law are vital and integral to its effect as a regulation of conduct, liability to private suit is or may be as potent a deterrent as liability to public prosecution, and in this respect there is no distinction dependent on whether the suitor was injured while employed or traveling in one kind of commerce rather than the other. Hence, while it may be conceded for the purposes of the argument that the mere question of compensation to persons injured in intra-State commerce is of no concern to Congress, it must be held that the liability of inter-State carriers to pay such compensation because of their disregard of regulations es-

tablished primarily for safeguarding commerce between the States is a matter within the control of Congress, for unless persons injured in intra-State commerce are to be excluded from the benefit of a remedial action that is provided for persons similarly injured in inter-State commerce,—a discrimination certainly not required by anything in the constitution,—remedial actions in behalf of intra-State employees and travelers must either be governed by the acts of Congress or else be left subject to regulation by the several States, with probable differences in the law material to its effect as regulatory of the conduct of the carrier. We are therefore brought to the conclusion that the right of private action by an employee injured while engaged in duties unconnected with inter-State commerce but injured through a defect in a safety appliance required by the act of Congress to be made secure has so intimate a relation to the operation of the act as a regulation of commerce between the States that it is within the constitutional grant of authority over that subject."

It is argued that the Workmen's Compensation act does not conflict with or abrogate any of the provisions of the Safety Appliance act but only changes the remedy. The Safety Appliance act by irresistible inference, as held by the Supreme Court of the United States, confers a private right of action for the death or injury of an employee caused by a violation of its terms. This right of action was to recover compensatory damages for the loss suffered. The Workmen's Compensation act would take away this right of action and confer instead a right to a sum fixed by statute without regard to the damages in the particular cases except by reference to the wages which the employee was then earning in his particular employment. The Workmen's Compensation act substitutes not a different remedy for the employee but a different thing for him to recover.

The contentions that Congress has no power to legislate with reference to the relation of master and servant between

an inter-State railroad and an intra-State employee, and
that the act of Congress in giving a right of action for the
death or injury of an employee does not prevent legislation
by the several States with reference to the measure of com-
pensation, are answered by the language quoted from the
case of *Texas and Pacific Railway Co.* v. *Rigsby, supra,*
and the case of *Southern Railway Co.* v. *United States,*
222 U. S. 20.

It is not insisted that there was no evidence which re-
quired the questions whether the coupler was defective and
whether the defect was the proximate cause of the injury
to be submitted to the jury. The court properly refused
to direct a verdict for the defendant.

Complaint is made of the alleged misconduct of coun-
sel for the defendant in error in the course of the trial and
many supposed instances are cited in the brief of the plain-
tiff in error. Some of them are unimportant but in other
instances there was room for just criticism of counsel's con-
duct,—no more, however, on the part of the defendant in
error than on that of the plaintiff in error. In the course
of his closing argument counsel for the defendant in error
solemnly declared to the jury, upon his word of honor as
a man and as a lawyer, that he thought his client had a
good case. This was grossly improper, for the personal
opinion of the counsel in a cause and the weight and in-
fluence of his professional judgment are not proper to be
considered by the jury in arriving at their verdict, which
must be determined by the evidence and the law as given
in the instructions of the court. Counsel recognized the
impropriety by stating that he had no right to express a
personal opinion except in reply to the statement by oppos-
ing counsel of his personal opinion. In fact, the counsel
for the defendant in his argument had stated his personal
conviction that the plaintiff had not proved his case and
that the defendant had proved its innocence. The reply
of the plaintiff's counsel was perhaps more solemn, decided

and emphatic than the expression of the defendant's counsel and was accompanied by some remarks reflecting upon the latter's conduct in the trial, but it was brought about by the improper statement of the defendant's counsel, and the defendant's counsel, who first offended in this regard, cannot complain that the plaintiff's counsel put his personal opinion against that of the defendant's counsel.

The plaintiff's counsel several times alluded to his client as "this one-armed man." The plaintiff was present at the time, his hand was amputated three inches above the wrist, the jury could see that he was a one-armed man, and the defendant could not be prejudiced by referring to the patent fact that he was a one-armed man when the loss of his hand was the injury sued for.

The conduct of counsel in the course of the examination of witnesses and his remarks made during the trial are criticised in a number of instances. The trial lasted several days and was closely contested. There was some asperity on either side in the examination and cross-examination of witnesses, in the making of objections and in argument, but no error was committed by the court and there was no misconduct of counsel which affected the verdict or should cause a reversal of the judgment. Such misconduct as occurred was about equally divided.

The defendant called as a witness an expert car-equipment engineer to testify in regard to the R. E. Janney coupler. After describing the mechanical construction of the coupler, (referring to a model which was introduced in evidence,) in response to a hypothetical question he stated that in his opinion if an examination of the knuckle discloses that the knuckle is not worn, that the knuckle-tail and knuckle-tail stop are not broken, and that the lock-pin is a new lock-pin and is not worn or broken, the lock-pin could not fall behind the knuckle when the knuckle was open. On cross-examination he was asked: "If that lug is worn,—say half of that face worn off,—then it will

open up enough to let the pin drop right down behind the
knuckle, won't it?" An objection to this question on the
ground that it was not cross-examination and not based on
the evidence was overruled, and the witness answered "yes."
To another similar question the further objection was made
and overruled that it was not a question for an expert. The
witness having expressed the opinion, on a certain hypothe-
sis, that the pin could not drop behind the knuckle, it was the
right of the other side to vary the hypothesis and ascertain
what circumstances would affect the opinion of the witness.
He was an expert in the employ of the manufacturers of
the coupler, and the plaintiff was not restricted in cross-
examination to the facts shown to exist but could test the
witness' knowledge and fairness by inquiry as to whether
his opinion would be affected by a change of conditions.

Objection is made to the giving of instructions 2 and 4,
the first of which, after reciting in substance the provisions
of sections 1 and 3 of the Employers' Liability act, con-
cluded by setting out in full section 4, declaring that in any
action against any carrier, under the provisions of the act,
for the injury or death of an employee, such employee shall
not be held to have assumed the risk of his employment in
any case where the violation by such common carrier of
any United States statute enacted for the safety of em-
ployees contributed to the injury or death of such employee.
Instruction No. 3 stated the provisions of section 2 of the
Safety Appliance act requiring cars to be equipped with
automatic couplers, and instruction No. 4 stated, substan-
tially in the language of section 8 of that act, that any em-
ployee injured by any locomotive car or train in use con-
trary to the provisions of the act shall not be deemed to
have assumed the risk. The objection urged against these
instructions is that they were misleading because they con-
tained no explanation or limitation to the negligence charged
in the declaration and sustained by the proof. The instruc-
tions did not direct a verdict but only stated the rules of law

established by the statute which must control the deliberations of the jury. In the application of these rules the jury were told in other instructions that the plaintiff could not recover under the first count of the declaration if the coupler in question was not defective or improperly constructed, nor under the second count unless he has proved that his injuries were the result of some act of negligence on the part of the defendant or its conductor charged in the second count, and that as to the second count he must prove that the conductor negligently caused or permitted a car to be kicked against the car in question. The jury were further told that before the plaintiff can recover the jury must find that the defendant was guilty of either one of the specific charges of negligence in the plaintiff's declaration, and that the instructions should be regarded as a connected body and applied to the facts as a whole and not detached or separated any one instruction from the others. In *Devine* v. *Chicago, Rock Island and Pacific Railway Co.* 266 Ill. 248, the objection made to these instructions was considered and held invalid.

It is said that the jury might infer from the last sentence of instruction No. 2 that the Employers' Liability act was a statute enacted for the safety of employees, and that therefore the plaintiff could not be charged with assuming the risk of the conductor's negligence charged in the second count, which is based on the Employers' Liability act. The jury could not, however, have drawn such an inference, for they were expressly informed in other instructions that the doctrine of assumed risk did apply to the second count.

The other objections to instructions have been answered by what has already been said on the question whether or not the plaintiff in error was a common carrier.

The judgment will be affirmed.     *Judgment affirmed.*