Cerny Pickas and Company, and Orient Insurance Company, Appellants, v. C. R. Jahn Company, Appellee.

Gen. No. 45,633.

Opinion filed June 18, 1952. Rehearing denied July 15, 1952. Released for publication July 17, 1952.

Edward J. Bradley, Edward S. Coath, and Katherine Nohelty, all of Chicago, for appellants; Edward J. Bradley, Edward S. Coath, and Richard G. French, all of Chicago, of counsel.

Clausen, Hirsh & Miller, of Chicago, for appellee.

Mr. Justice Feinberg delivered the opinion of the court.

Plaintiff brought this tort action against defendant for damages, charging negligence resulting in the total loss by fire of certain premises and machinery therein contained, leased to defendant by plaintiff, and also charging that defendant caused the fire in question through the violation of certain ordinances of the City of Chicago.

The complaint, *inter alia,* charged that plaintiff was the owner of the premises described, improved with several buildings containing machinery and equipment, all leased to defendant and in the exclusive possession and control of defendant; that defendant constructed a certain toilet room in said premises, enclosed on all sides, approximately 20 feet long, 15 feet wide and 8 feet high; that defendant caused and permitted a fire to occur on said premises, resulting in the destruction of said buildings, equipment and machinery; that defendant unlawfully installed a domestic gas hot-water heater in violation of section 80–24.6 of the Municipal Code of Chicago; and that defendant unlawfully constructed the toilet room, using wooden joists, plywood sheeting and pine one by six sheeting, without covering same with incombustible material, in violation of section 61–70 of the Municipal Code of Chicago.

Plaintiff Orient Insurance Company claims part of said damages as subrogee under an insurance policy covering said premises issued to plaintiff to the extent

of the amount of the settlement and payment to plaintiff, as therein alleged.

Defendant filed an answer admitting the leasing of the premises but denying that it was in exclusive control and possession; alleging that plaintiff occupied a portion of said premises on the date of the fire, and denying all of the allegations of negligence in the complaint or that it violated any of the ordinances alleged in the complaint. As a special defense it set up the lease covering the premises from plaintiff to defendant and attached said lease to its answer as an exhibit. It alleged that under the terms of said lease plaintiff wholly exempted and exonerated defendant from any liability to plaintiff for damage to the building, machinery or equipment occasioned by fire, whether such fire resulted wholly from accidental causes or was occasioned through the neglect of defendant, its agents or servants; that under the provisions of said lease it became the duty and legal obligation of plaintiff at all times during the period of said lease to provide sufficient fire-insurance coverage to fully and wholly reimburse itself as lessor for any loss or damage occasioned by fire; that plaintiff failed to notify or advise defendant that plaintiff had breached its covenant and had failed to procure sufficient fire-insurance coverage to fully and completely indemnify or reimburse said plaintiff in event of damage or destruction by fire. Plaintiff moved to strike the special defense set up under the lease, which motion was denied.

Plaintiff filed a reply to the answer admitting the terms of the lease and denying that defendant was led to believe plaintiff had procured sufficient insurance to indemnify itself, or that there were any representations made to defendant concerning it.

The cause was decided upon the pleadings. The court found that the lease in question as a matter of law exempted defendant from liability and entered

judgment for defendant, from which judgment plaintiff appeals.

The pertinent provisions of the lease in the consideration of the questions presented are to be found in the following paragraphs of the lease:

"2. . . . Lessee will keep said premises, including all appurtenances, in good repair, . . . and upon the termination of this lease, in any way, will yield up said premises to Lessor in good condition and repair (loss by fire and ordinary wear excepted) . . . .

"3. Lessee will not allow said premises to be used for any purpose that will increase the rate of insurance . . . and will not permit said premises to be used for any unlawful purpose . . . or increase the fire hazard of said building . . . .

"8. Lessor shall not be obliged to incur any expense for repairing any improvements upon said demised premises or connected therewith save as in this clause provided, and the Lessee at his own expense will keep all improvements otherwise in good repair (injury by fire, or other causes beyond Lessee's control excepted) as well as in a good tenantable and wholesome condition, and will comply with all local or general regulations, laws and ordinances applicable thereto . . . .

"14. Lessor shall pay for fire insurance on the building and equipment and machinery hereby leased, and Lessee agrees to pay for any increase in fire insurance premium on such insurance policies, due to any increase in the insurance rate due to the nature of Lessee's business, or the manner of its conduct of the business.

"16. Lessee agrees that at the expiration of this lease, said leased premises, machinery and equipment shall be returned in good condition, ordinary wear and

tear excepted. Said Lessee shall have the right to install . . . additional toilet facilities . . . .

"18. . . . said Lessee shall restore said premises, at the expiration of this lease, to the same condition as at the time of entry into possession under this lease, ordinary wear and tear excepted.

"29. In case said premises shall be rendered untenantable by fire or other casualty, Lessor may, at his option, terminate this lease, or repair said premises within sixty days, and failing so to do, or upon the destruction of said premises by fire, or other casualty, the term hereby created shall cease and determine."

██ Defendant properly urges that in the construction of the provisions of the lease, the lease must be read and considered as a whole in arriving at the intention of the parties. However, defendant further contends that the intention clearly deduced from a reading of the entire lease is that plaintiff was to keep the premises fully insured to indemnify itself against loss by fire, and that defendant is exempted from liability by the express language of the lease obligating it to return the premises in good repair and condition at the termination of the lease, "loss by fire . . . excepted," whether the fire results from its negligence or by causes not attributable to defendant.

Plaintiff argues that the language of the lease cannot be construed as contended by defendant, and if so construed would make such provisions of a lease contrary to public policy and void.

The respective contentions require us to determine (1) whether the language in the instant lease is clear and explicit that the parties intended the lessee to be relieved of liability for loss by fire, occurring through the alleged negligence of the lessee or through the alleged violation of a positive duty imposed by the ordinances, and (2) that even if such intention seems

clear from the language in the lease, is such provision against public policy and void?

Defendant relies upon *Checkley v. Illinois Cent. R. Co.,* 257 Ill. 491, and *General Mills, Inc. v. Goldman,* 184 Fed. (2d) 359 (opinion by a divided court) (certiorari denied, 340 U. S. 947). In *Checkley v. Illinois Cent. R. Co., supra,* the defendant was the lessor, plaintiff the lessee, of a building owned by defendant. Defendant's servants did not know that the strip of ground which they sought to clear of weeds by burning had been leased to the plaintiff. The fire started by these servants reached the building leased by plaintiff, and it was damaged by the fire. Plaintiff, as lessee, sought to hold the lessor for the negligence of its servants. The lease had the following provision:

"The lessee . . . during the continuance of said tenancy . . . will exercise such care and cause such precautions to be taken as shall adequately protect buildings and structures on said demised premises and their contents, and all property, of whatever description, situated on said premises, against all dangers to which they may be exposed from fire by reason of the proximity of said premises to the railroad operated by the lessor and the movement or use of locomotive engines and cars upon its tracks; the risks of all loss, injury and damage by fire, however caused, and whether or not caused by the negligence of the lessor, its agents or servants, being hereby assumed by the lessee, who, in consideration of the leasing of said premises on the terms aforesaid, hereby agrees to indemnify and save harmless the lessor from all liability for damage by fire, however the fire may originate, the risk of which is assumed as aforesaid."

The lessor relied upon this clause in the lease to relieve it of liability for the alleged negligence of its servants. The question raised was whether this pro-

vision was against public policy and void. The court there distinguished the class of cases involving common carriers having duties to perform imposed by law, and fire insurance cases involving policies which indemnified one against fire, though caused by insured's negligence, from cases not involving a public interest or a public duty. The court held the language of the lease in question, under any fair construction, exempted defendant from any liability for damages arising from a fire resulting from the negligence of appellee's servants or otherwise, and that in the particular case it was not against public policy.

We think that the *Checkley* case is factually distinguishable from the instant case. We do not believe the court in the case cited intended that the doctrine stated should extend to a set of facts involved in the instant case or to modify the rule of public policy announced by it in *Kenna v. Calumet, Hammond & Southeastern R. Co.*, 206 Ill. App. 17, 42, affirmed 284 Ill. 301; *Consolidated Coal Co. v. Lundak,* 196 Ill. 594, 598, and *Campbell v. Chicago, R. I. & P. Ry. Co.,* 243 Ill. 620, 625. We shall presently discuss these cases.

In the *Checkley* case the lessor and lessee, anticipating that fire could result from the operation of its adjacent railroad property, specifically provided in the lease that the lessee was to adequately protect the buildings and structures and their contents against all dangers to which they might be exposed from fire by reason of the proximity of such premises to the railroad operated by the lessor. The lessee expressly assumed "all loss . . . and damage by fire, however caused," and such assumption of loss and risk was a part of the consideration of the leasing.

██ The provision in the Checkley lease is vastly different from those in the instant case, particularly the language in clause 8 of the instant lease requiring the lessee at his own expense to keep all improvements

385

in good repair, "injury by fire, or other causes beyond Lessee's control excepted." We think the reasonable construction to be placed upon the quoted language is that injury by fire is included with other causes beyond lessee's control and, therefore, if the fire was not beyond lessee's control, it did not come within the exception there provided.

■■ Contracts exempting liability for negligence are not favored by the law. They are strictly construed against the party relying on them, and clear and explicit language in the contract is required to absolve a person from such liability. 17 C. J. S., § 262, and cases there cited.

The Supreme Court of Washington in *Carstens v. Western Pipe & Steel Co.*, 142 Wash. 259, 252 Pac. 939, 941, had the same view of the *Checkley* case and pointed out that the language in the lease in the *Checkley* case was much broader than the language of a surrender clause which merely provided "damage by fire excepted." The court there said:

"The real question involved is whether 'damage by fire excepted' included fires which were the result of respondent's negligence. That the purpose of the parties was to relieve the lessee from any damage done by accidental fires, there cannot be any question. Expressions similar to that used in this lease have been in vogue for a great many years. . . .

"Did that clause mean that the lessee was to be relieved from fires which were the result of its own negligence? We ought not to come to that conclusion, unless the lease definitely and certainly so expresses itself. It would be natural and customary for the lessee to want to escape liability for purely accidental fires and for the lessors to be willing to grant that relief, but it would not be natural that the lessors would be willing to release the lessee from damages caused by

its own active negligence. Such a concession would hardly be looked for in a contract between business men. If the parties intend such a contract we would expect them to so state in clear terms.''

The language in the instant lease does not expressly or impliedly exempt defendant from liability on account of negligence or alleged violation of a positive duty imposed by the ordinances.

Whether the construction of the provisions of the lease relied upon by defendant would render the exculpatory provisions referred to contrary to public policy and void has been the subject of a contrariety of opinion in the various jurisdictions. The validity of such provisions when so construed has usually arisen in the cases of master and servant, landlord and tenant, bailments, and common carriers. 17 C. J. S. § 262, and cases there cited. Some of these cases noted in the foregoing citation hold that freedom of contract should permit such exculpatory provisions in a contract to exempt a party from its own negligence (*Weirick v. Hamm Realty Co.,* 179 Minn. 25, 228 N. W. 175), and that such provisions are not unreasonable and not against public policy. Those courts, however, have clearly indicated in some of the cases that one cannot exempt himself from negligence in cases of a positive duty imposed by law, and as held in *Weirick v. Hamm Realty Co., supra,* and cases there cited, even private parties may not contract such exemption from liability for the consequences of a breach of some duty imposed by law. 17 C. J. S. § 262, and cases noted.

This principle, relating to the breach of some duty imposed by law, is particularly applicable to the instant complaint, which charges a violation of a positive duty imposed by the ordinances (§ 80–24.6 of the Municipal Code of Chicago) in the installation by defendant of a domestic gas hot-water heater; the violation of section 61–70 of the Municipal Code of Chicago

387

in the construction and installation of the toilet room; and that both violations were the proximate cause of the fire.

The rule deducible from the Illinois cases is in harmony with the holdings in other jurisdictions that such exculpatory provisions in a contract are against public policy, and such provisions should not be construed to exempt a party from its own negligence or violation of a positive duty imposed by law.

In *Kenna v. Calumet, Hammond & Southeastern R. Co.*, 206 Ill. App. 17, 42, affirmed 284 Ill. 301, this court said:

"In the absence of legislative sanction, contracts between parties for the purpose of relieving one or the other, wholly or in part, from the legal consequences of future tortious or illegal conduct are contrary to public policy, and void."

In *Consolidated Coal Co. v. Lundak*, 196 Ill. 594, 598, where the defendant claimed that the notices and rules posted, of which the plaintiff had notice, constituted a contract between plaintiff and defendant, the court held:

Notices and rules posted for employees "are nothing but an attempt to make laws under the guise of rules, and so far as they are claimed to operate as a contract against the negligence and dereliction of the defendant they are void, as against public policy."

In *Campbell v. Chicago, R. I. & P. Ry. Co.*, 243 Ill. 620, 625, it was held:

"Public policy will not permit the master by contract with his servant to relieve himself from liability for injuries occasioned by his own negligence or to impose upon the servant a risk which the law imposes upon the master."

In *Arling v. Zeitz*, 269 Ill. App. 562, 566, where a lessee sued the lessor for damages resulting from

alleged negligence of the lessor, and where the lessor relied upon a provision in the lease exempting it from liability for any damage or injury to lessee or his property occasioned by the failure of the lessor to keep such premises in repair, this court, speaking through Justice McSurely, said:

"We do not agree with counsel for defendant that the clause of the lease above quoted would bar any recovery except for an affirmative act of negligence on the part of the landlord. There may be passive negligence or acts of omission on the part of the landlord 'with reference to defects of which he had notice or should have known, where the lease would not exonerate him from liability."

In the *General Mills* case, *supra,* relied upon by defendant, as to the particular language of that lease and the testimony in the case upon which the court held that such a provision is not against public policy, the court also said:

"It may be true that a covenant in a lease that the tenant shall be excepted from obligation to the landlord for loss by fire does not absolutely in all circumstances relieve the tenant from liability for fire caused by its negligence."

██ Based upon the Illinois cases cited and the cases from other jurisdictions, we consider it to be a sound principle of law that, even if the language of the instant lease clearly expressed an intention of the parties to exempt the defendant from liability for loss or damage occasioned by fire through the negligence of the defendant or through the defendant's alleged violation of a positive duty imposed by the ordinances, such provision would be against public policy and void.

We conclude that the trial court erred in holding as a matter of law that the provisions in the instant lease were a complete defense to the charges in the instant

complaint. There should be a trial upon the merits of the issues raised by the pleadings. Accordingly, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

KILEY, P. J. and LEWE, J., concur.