**ROCK SPRINGS REALTY, INC., Appellant,**

v.

**Robert Lee WAID, Billie I. Waid, O. D. Moffett and Mrs. Helen Moffett, Leonard W. White and Mrs. Leonard W. White and Virgil Rogers, Respondents.**

No. 51125.

Supreme Court of Missouri,

Division No. 2.

July 12, 1965.

Paul H. Niewald, Gordon, Adams, Niewald & Risjord, Kansas City, for appellant.

Lloyd S. Hellman, Achtenberg, Sandler & Balkin, Clem W. Fairchild, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for respondents.

EAGER, Presiding Judge.

This suit is one by a successor lessor against the lessees of a building used as a restaurant, for damages caused by a fire alleged to have been negligently caused. An employee of the lessees was also joined. More specifically, the petition proceeds upon a res ipsa theory and it alleges that the fire was negligently started by the use of the restaurant stove. The prayer was for $60,720.70 for the damage to the building and $2,600 for loss of rents. The principal defenses were: a denial of negligence, a claim of assumption of risk, the contention that the lease contained provisions which exonerated defendants from all damage by fire, and a plea of estoppel. By answers to interrogatories, plaintiff admitted the issuance of fire insurance policies totalling $45,000 and of a policy covering loss of rents; also, that it had made claim on the fire policies for $60,726.70, had collected on those policies $42,167.15, and that it had collected separately $2,600 for loss of rents. The insurers are not joined as subrogees. Plaintiff contends that the loss was not fully covered by insurance. The fire occurred on May 6, 1963; suit was filed on June 1, 1964. After the interrogatories were an-

swered and responses were made to requests for admissions, the defendants filed their motion for summary judgment under our Rule 74.04, which the court sustained; a final judgment for defendants was entered on this motion. It is not claimed here by appellant that there are any genuine issues of fact.

The one basic question raised, and the one upon which the trial court obviously based its judgment, is whether the provisions of the written lease constituted an exoneration or release of the lessees from liability for a fire caused by their negligence or that of their employees. The trial court held that it did; if we affirm, then the actual existence or nonexistence of negligence on the *facts* is immaterial. If we should reverse, then the case would necessarily be remanded for a determination of that issue, and perhaps others. We have determined that the judgment should be affirmed.

The pertinent provisions of the lease are as follows: "4. During the term, or any extension thereof, Tenant will not do, allow or permit:— * * * anything to be done or kept in the premises which will cause cancellation of, or increase in the premium for, fire and explosion insurance on the premises, or on the building of which the premises may be a part, or on contents belonging to anyone in the building, over the rate for occupancy of the business above mentioned; * * * 6. Tenant agrees: —to comply with all insurance regulations so the lowest fire, liability and explosion rates may be obtained; to pay all insurance premiums required to insure the full value at all times of all improvements made by Tenant in or to the premises * *; to maintain the premises and appurtenances in a first class condition and to pay for all repairs within or appurtenant thereto; * * to indemnify, protect and defend the Landlord from and against claims for damage or injury, of whatsoever kind or character, to person or property, howsoever caused, occurring in or about the leased premises,

* * * 9. In case, during the term created or previous thereto, the premises hereby let, or the building of which said premises are a part, shall be destroyed or shall be so damaged as to become untenantable by fire or by providential means, then, in such event, at the option of Landlord, the term hereby created shall cease, * * *. In case Landlord shall not so elect to terminate this lease, in such event, this lease shall continue in full force and effect, and the Landlord shall repair the leased premises with all reasonable promptitude, placing the same in as good condition as they were at the time of the damage or destruction, * * * If Landlord cannot obtain fire insurance in responsible companies by reason of Tenant's occupancy, Landlord may terminate this lease. * * * 18. At the expiration of this lease, *Tenant will surrender* keys and peaceable *possession of the leased premises* to Landlord or Agent, *in good condition; loss by fire, casualty, Providence and deterioration excepted.* * * * 21. Tenant shall not store or deposit garbage or trash around or on the premises and will take special precautions as often as necessary to clean grease from exhaust fan and duct on roof to prevent danger of fire therefrom." (The italics are ours.)

The basic contentions here, pro and con, revolve around the construction of the provision that the lessee will surrender possession of the premises in good condition, "loss by fire, casualty, Providence and deterioration excepted." Defendants say and the trial court agreed that this, considered along with the remainder of the lease, evidenced an intent to relieve the lessees from liability for *all* fires regardless of negligence, and that if the lessor had intended the contrary the stated exception should have been limited to "fire caused without negligence of tenant." Appellant insists that the exception does not contemplate a fire caused by the lessees' negligence and that if such were intended that intent should and must have been specifically and clearly stated. The issue here is thus rather

narrow, though complicated. It is obvious that this lease, on a printed form with sundry and extensive protections to the lessor, was a "landlord's" lease, namely, that it was prepared and presented by the lessor. We note this for whatever it may be worth. The case is actually one of first impression in Missouri on these or similar facts, although certain cases to which we will refer assume to state principles which might be controlling, if followed in the abstract.

■ We shall first dispose of the suggestion sometimes made that an agreement to exempt or exonerate one from the consequences of his own negligence is against public policy. In so far as private individuals and private interests are concerned, that doctrine has been definitely rejected. Kansas City Stock Yards Co. v. A. Reich & Sons, Mo., 250 S.W.2d 692; Cerny-Pickas & Co. v. C. R. Jahn Co., 7 Ill.2d 393, 131 N.E.2d 100; General Mills v. Goldman, CA 8, 184 F.2d 359, cert. denied 340 U.S. 947, 71 S.Ct. 532 95 L.Ed. 683.

Seeking reversal of the summary judgment, appellant relies on the following cases and texts: Meyer Jewelry Co. v. Professional Building Co., Mo.App., 307 S.W.2d 517; Thomas v. Skelly Oil Co., Mo.App., 344 S.W.2d 320; Winkler v. Appalachian Amusement Co., 238 N.C. 589, 79 S.E.2d 185; Morris v. Warner, 207 Cal. 498, 279 P. 152; Sears, Roebuck & Co. v. Poling, 248 Iowa 582, 81 N.W.2d 462; Cerny-Pickas & Co. v. C. R. Jahn Co., 347 Ill.App. 379, 106 N.E.2d 828; Poslosky v. Firestone Tire & Rubber Co., Mo., 349 S.W.2d 847. Cerny-Pickas, supra, may readily be eliminated, as its theory was completely exploded by the Supreme Court of Illinois upon a subsequent appeal; we shall refer to that opinion later. 131 N.E.2d 100. Thomas involved an indemnity agreement and need not be discussed in detail; the opinion did state the principle that where one is to be indemnified against the results of his own negligence, the intention should be clearly expressed. In Morris, a California case of 1929, a redelivery clause

in a lease excepting "fire and ordinary use" was held not to exonerate the tenant from his own negligence, but it does not appear that the lease contained any provisions concerning fire insurance, the materiality of which will be shown later. We shall discuss the Meyer, Winkler, Sears Roebuck and Poslosky cases.

In Meyer Jewelry Co. v. Professional Building Co., Mo.App., 307 S.W.2d 517, a lease of first floor and basement space in an office building provided that lessor should not be liable for any damage to person or property " * * * by steam, gas, or electricity, or from water, (from certain specified sources and causes) * * * or for damages * * * from the acts or negligence of co-tenants or other occupants * * *." (Words in parentheses are ours.) After plumbers had renovated the sewers in the basement quarters, water faucets were allowed to run and overflow during the night, this being due to acts of lessor's agents. The lessee sued the lessor for its damage. The court held that the lease did not exempt the lessor from liability for its negligence, although it did exempt it from certain negligent acts of third persons; further, that an exculpatory clause must, in order to be effective exonerate the landlord "in plain terms" from its own acts of negligence. We note that the court there was not in any sense construing such a contract as we have here, and that no question of insurance was involved. Certain suggestions which we make later in connection with the Poslosky case are also applicable to this case.

In Winkler v. Appalachian Amusement Co., 238 N.C. 589, 79 S.E.2d 185, a theatre building was damaged by a fire caused by the careless operation of a popcorn machine by one of the tenant's employees. The lessor sued the lessee for negligent damage. The lease provided that the lessee would at the termination of the lease deliver up the premises in good condition, "ordinary wear and tear and damage by fire or other casualty excepted." A similar exception was

made in the lessee's covenant to repair. The lessors had agreed to carry insurance to the full value of the property and to restore the property in case of fire. Plaintiff was nonsuited, but the appellate court reversed and remanded; it held: that a lessee is ordinarily liable for negligence, and that a contract will never be construed as exempting the lessee from the results of his own negligence in the absence of express wording; also, that no exemption existed because of the insurance requirements. The court simply disagreed with the decision in the General Mills case, to be discussed later. Winkler, supra, and possibly the next case discussed are really the only cases cited by appellant which seem to be directly in point on its contentions. We are convinced that the majority of the recent cases, and indeed the sounder rule, is to the contrary.

In Sears, Roebuck & Co. v. Poling, 248 Iowa 582, 81 N.W.2d 462, the tenant had cut openings through a firewall and thus had allowed a fire on adjoining premises to enter and damage his lessor's property. The lessor sued it for the negligent damage. The lease there required the lessee to redeliver the premises in substantially as good condition as when received, "loss by fire, tornado, earthquake or any unavoidable casualty and ordinary wear and tear excepted." The tenant claimed that this constituted an exoneration from all liability for fire, even for a negligent fire. The lease further provided that the lessor should keep the property insured for its full value at his expense. The court held that there was no exoneration by reason of the lease provisions and that any such exoneration or exemption must be clearly expressed; it noted that the other excepted causes (in addition to fire) were all unavoidable occurrences, and it so construed the reference here to "fire"; it noted further that the negligence consisted of affirmative acts which were in themselves a violation of the lease. The court distinguished General Mills on the wording of the respective exceptions, and by reason of the affirmative

acts of negligence in the Sears case. It will be noted that the exception in the Sears case was considerably different from the one in ours.

In Poslosky v. Firestone Tire & Rubber Co., Mo., 349 S.W.2d 847, suit was brought by the lessors and certain subrogated insurers against the tenant for damages from an allegedly negligent fire. The lease required the owner to carry insurance to the full insurable value of the property and to use the proceeds of such insurance for rebuilding in case of destruction by fire, as and if required by other provisions of the lease. The surrender clause merely required the tenant to deliver up the premises "peaceably" upon termination with no reference whatever to the condition of the property or to any exceptions. The lease was on a printed form prepared by Firestone, the lessee. After the individual plaintiffs acquired the property they reduced the insurance from $50,000 to $25,000; following the fire, they collected the reduced amount and sold the property, without repairing it; their claim was for the difference between the sum collected on the insurance and the alleged total value. The defendant contended that the insurance requirements were intended as, and operated as, a complete substitute for lessee's liability in case of any fire, that lessee was in effect paying the premiums by increased rentals, and that the parties had, by their agreement, transferred all risk to the insurers whose policies covered negligent fires as well as others generally. The trial court so held. The policies covered all direct loss by fire and did not attempt to exclude negligently caused fires. This court held that any exemption of Firestone for a negligent fire must have been inserted in the lease in clear language and, since that had not been done, the judgment was reversed and the case remanded. In referring to those cases where the leases contained redelivery clauses with exceptions for "fire," the court said, loc. cit. 851: "In the present case there is no specific provision excepting fire

damage from the obligation of the lessee and, consequently, those cases are not pertinent." However, the court did proceed to consider the specific rulings of some of those cases concerning the insurance question, and it concluded that the sole reason for the insurance provisions in Poslosky was to assure the lessee that the lessor would have funds available for rebuilding. We do not now repudiate the opinion, but we hold that its broad language to the effect that any exemption of a lessee for negligence must be "clearly and explicitly stated" may not be applied, per se, to a lease containing a redelivery clause excepting liability for *"fire"* which the lease in that case did not contain. The principle stated is sound when properly applied, but in a case such as the present one the intention of the parties must be ascertained from the whole lease, including its provisions concerning insurance. In other words, every case like the present one must be decided on its own facts and on the actual terms of the lease. What we have just said applies equally to the Meyer Jewelry case, supra.

The texts cited, 51 C.J.S. Landlord and Tenant, § 414, and 32 Am.Jur., Landlord and Tenant, § 783 (and therein see the Pocket Parts) contain general statements which are only of value to the extent that they are supported by adjudicated cases. We are here seeking to analyze the material cases, pro and con.

The following cases hold, generally, that an exception for loss by fire in the redelivery clause of a lease, when coupled with an agreement for the carrying of adequate insurance by the lessor, constitutes an exoneration of the lessee from liability for fire damage, even though negligently caused: General Mills v. Goldman, CA 8, 184 F.2d 359, cert. denied 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683; Cerny-Pickas & Co. v. C. R. Jahn Co., 7 Ill.2d 393, 131 N.E.2d 100; United States Fire Ins. Co. v. Phil-Mar Corp., 166 Ohio St. 85, 139 N.E.2d 330. While General Mills, supra, seems to be regarded as the leading case, the Cerny-Pickas opinion is, to us, at least as persuasive. In General Mills, supra, sundry provisions of the lease are set out but we quote the following: "That the Tenant will keep at its own expense said demised premises * * * in good repair * * * and that it will not use or permit anything upon said premises that will increase the rate of insurance thereon, * * * and the Tenant agrees to return said premises peaceably and promptly to the Lessor at the end of the term of this lease, or at any previous termination thereof, in as good condition as the same are now in or may hereafter be put in, loss by fire and ordinary wear excepted." The premises were very substantially damaged by fire from a cause which may be assumed to have been the negligent act of an employee of the lessee. The lessor and certain subrogated insurers sued the lessee. The trial court held that defendant was not exonerated by the terms of the lease. The Court of Appeals reversed, with one judge dissenting. The lease contained no specific provisions regarding the obligation to insure, but evidence was admitted (and held properly so) to show that there was an understanding between the parties that the lessor would carry the insurance; it did insure, and following the fire it was paid the "full amount of its investment." The court held, in substance: that it was intended by the parties that the rents should pay the insurance premiums and that any fire loss would be satisfied from the insurance, which agreement was not contrary to Minnesota law or public policy; that the lessor might fully control the insurance; that, in the light of such circumstances, the exception of "loss by fire," exempted the lessee from liability for any fire loss which is ordinarily covered by insurance, as was this fire. The court thus said in part, loc. cit. 364, 365, 366 of 184 F.2d: "But there is no public policy in Minnesota inimical to resort to fire insurance covering loss by fire occurring with or without negligence and there is no reason for applying any 'strict construction'

to a lease entered into in contemplation of having a fully appreciated and guarded against fire risk carried by an insurance company. The undisputed evidence in this case presents exactly that situation. The landlords here agreed that the tenant should not be liable to pay for 'loss by fire' because it was understood between them that fire insurance would be taken out and a fire insurance company would be required to pay for any 'loss by fire' occurring on the premises during the term of the lease. Such insurance company would be required to pay whether the 'loss by fire' was caused by negligence or not as fire insurance universally covers loss by fire occurring from the kind of negligence here involved. The premiums to fire insurance companies are based on actuarial computations of fire losses so occurring. The policies are standardized and we are informed of no other kind of fire insurance in use in this country. * * *

"The release of the tenant from obligation or liability for 'loss by fire' removed all interest on the part of the tenant to exact specific obligations of the landlord in the lease in respect to fire insurance and the landlord was left free as it wanted to be to control the fire insurance as to amounts, terms and companies. The reciprocal obligations of the tenant to subordinate its use of the premises to the contemplated fire insurance requirements specifically referred to in the lease and the tenant's obligation to pay a rental agreed to in view of the fire insurance cost to the landlord, considered with the release of the tenant from loss by fire, completely and unequivocally express the mutual intention to relieve the tenant from loss by fire regardless of negligence and the provisions fully preserved the relating of the lease to the mutual understanding that loss by fire would be covered by fire insurance. * * *

"It is very clear in the light of all the provisions of the lease, the circumstances of its execution and the understanding about fire insurance coverage to which the lease was related that by the provision that on termination of the lease the tenant should return the property in good condition 'loss by fire * * * excepted' the parties meant a loss by fire such as is always meant when men are talking about or figuring on the risk of it in business dealings—i. e., the 'loss by fire' which always is insured against in ordinary course and against which the landlords here intended to and did take out insurance in an amount greater than the owners' investment." The dissent proceeded generally upon the theory that the exemption from "loss by fire" should be held to apply only to contract liability and not to torts, that nothing in the lease actually required the lessor to carry insurance, that the question of insurance was immaterial, and that the court should adopt the view of the District Judge on the question of local law.

The opinion of the Supreme Court of Illinois in Cerny-Pickas & Co. v. C. R. Jahn Co., 7 Ill.2d 393, 131 N.E.2d 100, is very persuasive. There the lessor and an insurer joined in a suit against an allegedly negligent lessee for damages from a fire. The defendant claimed full exoneration under the terms of its lease; the lease provided that the lessee should keep the premises in repair and redeliver them upon termination in good condition "(loss by fire and ordinary wear excepted)"; also, that the lessor should pay for fire insurance but that the lessee should pay for any increase in rates due to the nature of its business. The plaintiffs had recovered in the trial court and that judgment was affirmed by the Court of Appeals, following a decision on a prior appeal reported at 347 Ill.App. 379, 106 N.E.2d 828. The Supreme Court reversed all such judgments. It held: that contracts exempting from negligence are valid as between private persons and involving private interests; that if all the provisions of a lease show an intent to exempt the lessee from loss occasioned by a negligent fire that is sufficient, without a specific mention of any such exemption;

that the word "fire" as normally used includes all fires; that the parties contemplated the carrying of insurance to cover all losses in lieu of any liability on the part of the lessee. The court there said in part, 131 N.E.2d loc. cit. 102–103: "The argument most strongly urged against exoneration of the lessee is that the lease does not in so many words provide that the lessee be free from liability for fires resulting from its own negligence. Of course, if the lease contained such an express provision, that would be the end of the matter. But because the contingency was not covered by express language, it does not follow that the instrument may not, when all of its provisions are considered, show that the parties themselves intended that the lessee should not be liable. That determination is to be made upon a consideration of the instrument as a whole. * * * In the absence of any contrary expression in the lease, the lessee is not liable to the lessor for damages to the premises from fire which is not the result of his own negligence. (Tiffany, Landlord and Tenant, sec. 111.) Therefore, unless this clause of the lease exempts the lessee from liability for loss by fire resulting from his own negligence, it does no more than restate the lessee's common-law obligation. * * * There are areas of the law in which the distinctions between liability in contract and liability in tort may be significant, despite their remote and accidental origin. We are not satisfied, however, that such distinctions are relevant in determining the meaning to be given to words used by laymen in defining their rights and obligations. The word 'fire' is used without qualification throughout the lease before us. Its natural meaning would include all fires, regardless of their origin. To express the meaning for which the lessor contends, the lease would have to be altered to modify the word 'fire' by the qualifying words 'not due to lessee's negligence.' It is more reasonable to assume, we think, that laymen would regard the word 'fire' as including all fires whether of negligent origin or otherwise.

Under familiar standard fire insurance policies the insurer is obligated to pay for fires caused by negligence. * * * Although clause 26 requires the lessee to carry specified kinds of insurance, its responsibility with respect to fire insurance is limited to the obligation to pay for any increase in the insurance premium due to the nature of its business or the manner in which it was conducted. From the lease as a whole we conclude that the lessee was not to be liable for loss by fire regardless of the cause of the fire, and that the parties intended that the lessor should look solely to insurance as compensation for damage caused by any kind of fire." The prior Cerny-Pickas opinion at 106 N.E.2d 828, cited and relied on by plaintiff, has thus been wholly repudiated. Two judges dissented on the later appeal, partially on the theory that the exception should be construed as applying only to contract liability, but also insisting that clear language should be required for such an exemption as was claimed.

A very similar decision appears in United States Fire Insurance Co. v. Phil-Mar Corp., 166 Ohio St. 85, 139 N.E.2d 330, where there was an exception in the redelivery provision of "loss by fire and ordinary wear and decay only excepted." The insurers sued the lessee. The court held in substance: that the word "fire," as used generally in fire insurance policies, includes all types of fires except arson; especially was that true where no qualification was made of the word in this excepting clause, although the word was specifically qualified as used in the provisions regarding destruction and repair, and the term "wear and decay" was qualified even in the excepting clause; that the lease as a whole, including the stated obligation of the lessee to pay for certain increases in the insurance rates, indicated that it was intended that the lessor should look solely to the insurance. The opinon was adopted on a six-to-one vote. With particular reference to the insurance provisions, the court said, loc. cit. 333: " * * * Thus, in the

event of such an increase, lessee agreed to pay the increased cost of insurance. Clearly under this section of the lease it was contemplated that the lessor would carry insurance on the property and look to the insurance for compensation for any loss by fire. If the parties had intended otherwise, there would have been no reason for such provision."

In Kansas City Stock Yards Co. v. A. Reich & Sons, Mo., 250 S.W.2d 692, the court held that an oral agreement that the lessee would pay additional rentals to cover insurance costs and that the parties, lessor and lessee, would look solely to the insurance proceeds in case of fire, negligent or otherwise, was valid and not against public policy. This decision may also be construed as holding, inferentially at least, that any possible interference by such an agreement with the rights of insurers to subrogation would not constitute any legal impediment to the agreement, nor could policy provisions for subrogation rights interfere with the right of the lessor and lessee to so contract.

In Monsanto Chemical Co. v. American Bitumuls Co., Mo., 249 S.W.2d 428, a fire had destroyed chemical materials owned by Monsanto but held by defendant Cal-Spray Corporation for processing. It was claimed that the fire was of negligent origin. Monsanto had contracted to carry insurance to cover all materials so held for its account; it did insure, and thereafter collected the appropriate amount. It does not appear whether it was suing on behalf of the insurers, but in no event could their rights have been greater than Monsanto's. The court held that the agreement was one to carry insurance for the mutual benefit of the parties, as otherwise there would have been no purpose at all in inserting the provision; and that the insurance was intended, among other purposes, to protect Cal-Spray from liability for any fire due to its negligence, by way of a satisfaction from the insurance. The court noted that had Cal-Spray procured fire insurance such would clearly have covered the loss, and that this fact should constitute an additional reason for holding that the agreed insurance was for the benefit of both parties. The opinion is an illustration of the trend in the construction of such business contracts, as well as leases; namely, that where the parties agree for full insurance coverage of property the agreement is for the benefit of both, and the insurance proceeds will be held to constitute a satisfaction of any claims for loss by one party against the other. A contrary result may, of course, be specifically stipulated.

Interesting and worthwhile articles on the general subject involved here appear in 33 New York University Law Journal, p. 585 et seq. and in 18 Ohio State Law Journal, p. 431. These state that, while there is conflict in the decisions, the "recent tendency seems to be in favor of nonliability" (33 NY LJ 585); and a further interesting observation is made,—that if the insurer is permitted to recover by way of subrogation against the lessee, "the insurer gets a windfall in that it would have had to stand the loss had it been the lessor who was negligent, although the cost of the insurance ultimately is borne by the tenant in either case because included in the rent." In other words, if the lessee had been the named insured or a co-insured, no contention based on its negligence could have been made in any event. In 18 Ohio State Law Journal at 431–432, the commentator states: "The trend of the law is definitely to construe the exception of fire clauses as an exculpatory provision, relieving the lessee from liability for his own negligence. The two opposing rules of construction, construing a lease most strictly against the lessor, or most strictly against an exculpatory contract, have merely been used by the courts as a make-weight factor in support of their particular conclusions. The two essential elements to the exculpatory construction are: (1) the existence of an exception of loss by fire and (2) the existence of fire insurance on the premises paid for by the lessor. * * * From a practical

business point of view it is not likely that a manufacturing concern would intend only to protect itself from a[n] accidental loss and not loss due to its own negligence. Where it is clear that the parties contemplate insurance to be paid for by the lessor it is logical to conclude that they intend the lessee to pay for the insurance through rent payment. It would be an undue hardship to require a tenant to insure against his own negligence where he is paying for the fire insurance which covers the premises in favor of the lessor. The lessee should not be treated as a negligent third party subject to subrogation rights, but should have the benefit of the insurance policy. Such a policy contemplates a potentially negligent occupant and a right of subrogation would be a windfall to the insurer."

■ The present lease at least assumes that the lessor will maintain the insurance on the building. It forbids the lessees from doing anything which would cause a cancellation of the fire insurance or an increase in the rates, and it requires them to comply with all insurance regulations so that the lowest rates may be obtained and also to carry insurance on any improvements made by them; and specifically it provides that "If Landlord cannot obtain fire insurance in responsible companies by reason of Tenant's occupancy, Landlord may terminate this lease." We conclude that the intent of the parties here was that fire insurance should be carried by the lessor in adequate amounts for the benefit of both parties and that the exemption from "loss by fire" included all fires except those which, generally speaking, would be classed as arson. No reasonable businessman so contracting as a lessee would

understand this lease to be one exempting him only for "loss by fire" *not* caused by his negligence; rather, he would interpret it to mean that he was exempted from liability for all fires which could normally be (and were) insured against by the usual fire insurance policy. If the lessor or the successor lessor here chose to carry insurance for less than the full value of the property, any detriment so resulting to it is due to its own fault. We need have no compunction here about the position of the insurers as subrogees. Fire insurers expect to pay fire losses for negligent fires and their rates are calculated upon that basis; indeed, we may well assume that a great majority of fires are caused by someone's negligence, in a greater or lesser degree. No insurer could have any recourse against the lessor who took out the insurance; and if it is permitted a recovery merely because the tenant was not a co-insured, it would indeed be a "windfall." And, legally, the insurer's rights may certainly not rise higher than those of the lessor, who has here exculpated defendants by the terms of the lease.

We are not persuaded that the parties lessened or changed the ordinarily understood meaning of the word *"fire"* by the use of the words "casualty, Providence and deterioration" in the present exceptions of the redelivery provision. In conclusion, we suggest that such controversies as this might be greatly decreased in the future by a more apt choice of the language used in leases, and particularly in business and industrial leases.

The judgment of the trial court is affirmed.

All of the Judges concur.