J. E. BLANK, INC., Appellant-Respondent, v. LENNOX LAND COMPANY, a Corporation, Respondent-Appellant.—Nos. 37647-37649.—174 S. W. (2d) 862.

Court en Banc, July 20, 1943.

Rehearing Denied, November 1, 1943.

*James P. Aylward, George V. Aylward, Terrence M. O'Brien* and *Ralph M. Russell* for Lennox Land Company.

936

938

*Arthur Miller, Alton Gumbiner, Roscoe C. Van Valkenburgh* and *John Ryder* for J. E. Blank, Inc.; *Miller, Gumbiner, Sheffrey & Van Valkenburgh* of counsel.

942

944

946

948

*R. R. Brewster* and *John G. Madden* for J. E. Blank, Inc., on motion for rehearing.

DOUGLAS, J.—This is a suit for a declaratory judgment and other relief. J. E. Blank, Inc., lessee, plaintiff, asks for a declaration of its liability under a sublease from the Lennox Land Company, lessor, defendant, particularly as to its liability to pay defendant's income taxes by way of rent in addition to the stated amount of rent reserved; for an accounting and judgment for payments already made; and for an injunction restraining the forfeiture of the sublease. A temporary injunction was issued. Defendant joins in the request for a declaration of the rights and obligations of the parties under the sublease and asks that the temporary injunction be dissolved and the lease forfeited.

The trial chancellor found all fact issues in favor of defendant; gave defendant judgment for the amount of its income taxes which had accrued at the time suit was filed and plaintiff had refused to pay; also ordered the amount of defendant's income taxes which had accrued during the trial be calculated and paid; dissolved the

restraining order; but denied defendant the right to forfeit the lease if plaintiff paid all arrearages. The trial chancellor retained jurisdiction for the purpose of carrying the decree into effect. Both parties have appealed. Plaintiff, pending the first suit, filed a second suit in a different division of the circuit court in which it sought a second order restraining a threatened forfeiture of the lease. A permanent injunction was refused and plaintiff has appealed. That appeal has been consolidated with the cross appeals in the first suit. The three appeals are considered and disposed of herein. In this situation we shall refer to the parties as plaintiff and defendant.

Plaintiff includes in its petition for a declaratory judgment a request for other relief of equitable character. "Relief by declaratory judgment is sui generis, and while not strictly legal or equitable, yet its historical affinity is equitable." Borchard, Declaratory Judgments, pp. 137, 8, 172, 178. We quoted the above with approval in Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S. W. (2d) 945 where we held in effect that a cross bill seeking equitable relief converts a suit for a declaratory judgment into one in equity. Thus we now consider this case as we would a suit in equity.

Defendant holds a 99-year lease on a lot at the southwest corner of 11th & Walnut Streets in Kansas City on which is a six-story building. Defendant first sublet this property to one Federman by a sublease dated February 18, 1914 for a term from March 1, 1914 to July 31, 1925. On October 3, 1919 and while Federman was in possession under the first sublease, defendant made a second sublease with the Metropolitan 5 to 50c Stores, Inc. for a term to begin after the expiration of the Federman sublease. Metropolitan never took possession under its sublease but assigned it to plaintiff on January 19, 1924. Plaintiff went into possession on August 1, 1925.

The primary question for decision is whether by the terms of Section VI of the sublease plaintiff must pay by way of additional rent the amount of income taxes assessed under the current laws against defendant on the income defendant receives as rent from plaintiff.

The sublease, by Section V, reserves as rent "the net undiminished sum of $50,000 Dollars per annum." Besides this sum the lessee agrees to pay as additional rent such other sums as may be assessed against lessor for income taxes as provided by Section VI which is:

"Section VI. It is the intention of the parties to this lease, and a provision so far of the essence of the contract evidenced hereby and without which provision and agreement of the Lessee this contract would not have been entered into between the parties, that the payments specified in Section V of this lease, shall be paid by the lessee and received by the Lessor as a net sum, without deduction, discount or diminution of any character, or because of or for or on account of anything whatsoever; and as one of the considerations for the making of this lease, as hereinbefore recited, the lessee further cove-

nants, undertakes, promises and agrees to pay to the Lessor, or for it or them to persons authorized by law to receive the same, as part rent of the premises herein demised, in each and every year so long as the term hereby created shall obtain, the [866] following additional sums of money, to-wit:

"(a-1). All and every such sum and sums of money as, under any state law or any federal law, statute, ordinance, lawful regulation, or governmental authority whatsoever, now existing, or which hereafter may be enacted, ordained, or prescribed, shall be charged against, levied or assessed, upon or against, or be required to be paid out of, or because of, or be chargeable against the sum of the rentals, or the amount of any installment or the sum of two or more installments received by the lessor, or payable to said lessor and hereinbefore reserved in said Section V by way of tax upon the income of the Lessor, represented by or derived from said rental, or represented by any one installment, or by two or more installments thereof, or by way of any other tax, assessment, impost, levy or charge, assessed, charged or levied by any governmental authority whatsoever, State, Federal or Municipal, in the exercise of the power of taxation in any of its aspects, or of the police power, without release, exemption or exception on account of the nature or extent of any such tax, levy, impost, or assessment; the sums reserved as rental in such Section V hereof, having been determined upon and settled in view of the agreement of the lessee to pay the further and additional sums by this subdivision of this Section (VI) specified."

When the Federman lease was made the 1913 Federal Income Tax Act (38 U. S. Stat. at Large, 170), the first enacted under the Sixteenth Amendment, was in effect. Under its terms a lessee paying rent in excess of $3,000.00 a year was required "to deduct and withhold from such" rent a sum sufficient "to pay the normal tax imposed thereon", and to pay such sum directly "to the officer of the United States Government authorized to receive the same." Thus the tax was collected at the source. The 1916 Act did away with such collection of taxes at the source so far as lessees were concerned and by the 1918 Act collection at the source was eliminated altogether except as to nonresident aliens. These latter acts levied a direct personal tax against the recipient of taxable income. Missouri enacted an income tax law in 1917, Laws 1917, p. 524, now Section 11343, R. S. 1939, but it never required such a withholding from rents.

Plaintiff pleads in its petition and now contends here, that the section requiring plaintiff to pay income taxes was copied in practically identical terms from the Federman sublease and was intended to cover only the tax assessed specifically against the rent under the terms of the 1913 Act which was in effect when the Federman sublease was executed. Consequently, plaintiff argues, it is not required to pay the type of income tax now assessed against defendant as the 1913 Act has been superseded and the tax is no longer directed against

the rent but against defendant's income. Plaintiff asserts leases containing clauses of a similar type have been held to refer to the tax assessed under the 1913 Act and not to include the present form of personal income taxes. In support of its assertion plaintiff relies on these cases: Elliott v. Winn, 305 Mo. 105, 264 S. W. 391; Laclede Gas Light Co. v. St. Louis Union Trust Co., 321 Mo. 782, 12 S. W. (2d) 432; Missouri Athletic Assn. v. Delk, 323 Mo. 765, 20 S. W. (2d) 51; Dean v. Lee, 227 Mo. App. 206, 52 S. W. (2d) 426; Riesenberg v. Primary Realty Co., 214 Mo. App. 43, 258 S. W. 23. All consider tax clauses of long-term leases.

The first case in this State to consider such a tax clause was the Riesenberg case decided by the St. Louis Court of Appeals in 1923. The lease went into effect in 1906. It anticipated the levying of income taxes by providing lessee should pay "such income tax as would be payable on account of the rent reserved." Judge Becker, after reviewing a number of cases and discussing the terms of the income tax law then in effect, concluded such law imposed no income tax "payable on account of the rent herein reserved" but the tax was upon the general net income of lessor. He held the income tax contemplated by the lease was one which was "directed specifically against the rent reserved" [such as the 1913 Act]. Lessee was therefore not liable for it.

The first case to reach this court was the Elliott case decided in 1924. The lease was executed April 26, 1916 while the 1913 Act was still in effect. We held the writer of the lease was influenced by that act which struck at the rent itself. The lease required lessee to pay all income taxes assessed against the rents. We held this did not include income taxes assessed against the person under the terms of the 1916 Act even though a portion of such person's income may have arisen from the rent paid under the lease. In reaching our decision we observed [867] "we do not question the proposition that, as a part of the rent reserved, the lessor could have required the lessee to pay all or any portion of said lessor's personal income tax upon his net income, whether all of such net income came from rent or not. Nor do we question that the lessor might have required, as a part of the rent reserved, the lessee to pay such portion of his personal income tax as the rent reserved bore to the total net income."

The Laclede Gas Light case was decided in 1928. The lease, dated March 30, 1906, directed lessee to pay all taxes on the demised premises or upon the income, rents or profits arising therefrom. We held the income tax law then in effect did not levy a tax on rents which was the sort of tax lessee was required to pay, and cited the Elliott and Riesenbeg cases in support.

The Missouri Athletic Association case came next. The lease was dated October 15, 1914 and the provision for taxes covered those levied "on account of said demised premises . . . or the rental thereon."

We construed this to refer to taxes directed against the rent and held that lessee was not liable for any tax on lessor's net income.

The Dean case was ruled strictly on the authority of the Elliott case.

In all these cases the leases were made either before or during the period covered by the 1913 Act and the tax clauses were construed to cover only such income taxes as were assessed directly against the rent.

Whether or not an agreement by a lessee to pay lessor's taxes includes income taxes assessed against the lessor's income depends upon the words of the lease, the context in which they occur and the subject matter to which they are applied. Stony Brook R. Corp. v. Boston & M. R. Co , 260 Mass. 379, 157 N. E. 607, 53 A. L. R. 700.

There are cases from other jurisdictions, holding a lessee is obligated to reimburse his lessor for income taxes paid on income derived from rent where such is the intention of the parties to the lease, cited and discussed in the Missouri Athletic Assn. case. See also annotations in 140 A. L. R. 517; 124 A. L. R. 1020, and other annotations therein cited.

Turning now to the sublease and analyzing Section VI we find it first covers generally taxes levied by any governmental. authority then in effect or later enacted. It then covers taxes specifically chargeable against or required to be paid out of rental. But it next covers taxes *"upon the income of the lessor represented by or derived from said rental."*

It is true that Section VI of the sublease is almost identical with the same section of the Federman sublease. It is also true that Section VI clearly requires lessee to pay the character of income tax which was assessed under the 1913 Act in effect when the Federman sublease was made. Even so it is our conclusion that Section VI of the Federman sublease was designed to and did meet future changes in the tax laws such as the change which now directs the tax against the lessor's income rather than against the rent itself. And it was so construed by defendant and Federman when the change to the present type of income tax occurred and thereafter. This intention is not contradicted by the section in the Federman sublease which sets out the place where rents are payable. As found in the present sublease, the section reads: "The lessee agrees to make payment of rents herein agreed to be paid (except payments to be made to the City of Kansas City, to the State of Missouri, or to the United States, direct) at the office . . ." Both subleases in still another section require local and State taxes and utility rates assessed against the demised premises to be paid by lessee. The section as to the place of payment amplifies rather than restricts the type of taxes lessee is obligated to pay under Section VI. Moreover Section VI of the sublease broadened the obligation of lessee beyond that imposed by the Federman sublease to cover taxation "in any of its aspects." A pro-

vision was also added that the contract was entered into only on the agreement of lessee to undertake the obligation (to pay taxes) prescribed in Section VI. Of further and important significance is the fact the sublease was made on October 3, 1919, some time after the 1913 Act was repealed, and when there was no income tax directed against rents but against the net income of the taxpayer.

It seems clear to us that Section VI obligates the lessee to pay the income tax assessed under the present law against lessor's income derived from the rent.

The parties themselves have given this interpretation to Section VI. The evidence [868] shows that in April, 1926, Adams, defendant's bookkeeper, conferred with Ganz, plaintiff's president, about the payment of the 1925 income taxes. A statement of the amount due because of taxes had previously been sent plaintiff but plaintiff had objected to the way the taxes had been calculated. The parties conferred about the period in 1925 for which plaintiff was liable, having had possession for only five months, and about various deductions and credits in figuring both the Federal and State income taxes. After the conference a revised statement was submitted to plaintiff and plaintiff paid. There is no evidence whatever that plaintiff ever raised any question or objection as to its liability for the taxes. The same course of dealing between the same persons was had in 1927 when the statement was again revised and again plaintiff paid. Then in 1928 an amount to be used as the base for calculating the tax was agreed upon. This amount was reached by deducting from the $50,-000.00 rent the $20,000.00 ground rent paid by lessor to the owner of the fee and by also deducting two items of corporation taxes leaving the amount $29,876.10 as the base agreed upon. The current Federal and State income tax rates were then applied. This practice was followed in subsequent years except the amount used varied slightly for which no explanation appears. The 1929 statement used $29,882.00 as the base. The statements rendered in 1930, 1931, 1932, 1933, 1934, 1935 and 1936 are based on $29,882.50. Then in 1937, after paying the taxes for eleven years without objection, except in the first instances and then only as to items entering into the calculation, plaintiff takes the position for the first time that Section VI did not apply at all to the present type of income taxes and refused to pay the tax on the 1936 income.

Ganz was active as president of plaintiff company and had extensive ostensible authority. There can be no question of his authority to deal with Adams in construing the sublease. He died November 24, 1934. His death did not at once affect the settlement made with Adams for plaintiff continued paying taxes on the statements submitted in 1935 and 1936, calculated on the agreed base.

Ganz' death did not make Adams an incompetent witness under Section 1887, R. S. 1939 which hushes one party, where the other party is dead. Both parties to the sublease are corporations. The transac-

tions testified to by Adams were between agents of the respective parties. The statute removed factors which under the common law disqualifies a witness. We have held that an agent at common law was not disqualified as an interested party. Consequently the statute is not applicable to an agent and his competency is not affected by the statute. Maness v. Graham, 346 Mo. 738, 142 S. W. (2d) 1009; Bernblum v. Travelers Ins. Co., 340 Mo. 1217, 105 S. W. (2d) 941; Freeman v. Berberich, 332 Mo. 831, 60 S. W. (2d) 393. This court has recognized an exception to this rule. The exception provides that the death of a contracting agent excludes the surviving party who contracted with him. It has been followed in a line of cases which rely on Stanton v. Ryan, 41 Mo. 510 and Williams v. Edwards, 94 Mo. 447, 7 S. W. 429, which seem to be of doubtful authority in view of the principle announced in our above recent decisions. But even under the exception Adams is not hushed. It covers a transaction between an agent and a *party* to the suit, not one between an agent and an agent. Adams being but an agent, not a party, is therefore competent. Carroll v. United Rys. Co., 157 Mo. App. 247, 137 S. W. 303, is expressly overruled in so far as it holds to the contrary. See also 11 Laws Series, M. U. Bulletin, 60.

The practical construction given to a contract by the parties may not be considered where the contract is free from ambiguities. In such a case the contract must be construed as written. But where a contract is not clear it is construed as it is understood and acted upon by the parties.

Is Section VI ambiguous? The trial judge held it obligated plaintiff to pay the present type of income taxes. On appeal to this court before this case came to the Court en Banc it was first heard before Division One and an opinion was prepared holding the contrary and reversing the trial judge. Upon a dissent the case was transferred to Banc. The present opinion reaches an opposite conclusion to the one reached in Division and upholds the trial judge. Language is ambiguous where it is susceptible of interpretation in opposite ways.

In view of the ambiguity of Section VI we hold the trial court's refusal to forfeit the sublease was proper. A forfeiture [869] of a lease will not be enforced for a breach of a covenant unless the breach is unequivocal.

The evidence does not sufficiently show the agreement for calculating the tax liability on an agreed base was to continue throughout the entire term of the sublease despite Adams' testimony the method agreed upon in 1928 was ''for all future invoices'' and ''for subsequent years.'' The fact that defendant submitted successive annual statements calculated on an agreed base indicates in this case nothing more than the comprise was offered and accepted each year until 1937 when plaintiff elected not to accept it. Terms and provisions of income tax laws are ever fluctuating and changing according

to the needs of the sovereign. The base agreed upon was an arbitrary one and could not have been comprehended to produce the actual, down to the penny amount of taxes assessed against or paid by defendant each year. The statements show the computation was made by applying the current rate fixed under the Federal law against the agreed base and doing the same for the State tax using the same figure and then adding the two results which made up the amount due. As previously stated, the only deductions agreed upon to be subtracted from the $50,000.00 annual rent were the $20,000.00 ground rent paid the owner of the land and two items of corporation taxes. Although the *Federal* law permitted as a deduction the *State* income tax paid the previous year but not the *Federal* tax paid, and the State law permitted the opposite, such deductions nor any others were recognized in the compromise.

█ Plaintiff has recalculated the taxes for each year since 1925 using deductions for depreciation and for other items recommended by its income tax expert as standard practice in order to show that it has paid defendant in excess of the taxes defendant in turn paid to the Federal and State governments. Plaintiff also points out that defendant since 1925 has received no other income outside of the lease and that the State law was amended in 1929 (Laws 1929, p. 423, now sec. 11343, R. S. 1939) to exempt holding companies and relies on a ruling from the State Auditor given at its request in 1938, after the suit was filed, that defendant was a holding company and was not subject to the State tax. However, defendant was not previously apprised of such ruling and had paid the State tax each year. We do not believe plaintiff may complain, under the circumstances of this case, that defendant failed to secure this exemption. Plaintiff further objects, for the first time, to a decree of the Board of Tax Appeals entered in 1925 about what depreciation defendant could deduct in its Federal returns. Plaintiff will not now be heard to make such claims and objections. It is certainly concluded by its annual compromise on the base amount for the years the compromise was accepted. The evidence does not show nor did the trial chancellor find any hint of fraud, actual or constructive, or unfair dealing on the part of defendant in making or continuing the compromise.

So far as taxes accruing in the future or taxes not finally determined are concerned plaintiff should be permitted, if it desires, to resist defendant's liability for taxes, to claim refunds from the taxing authorities, to try out its theory that defendant being a mere conduit is exempt from the Federal tax, and to obtain such exemptions and deductions which are proper. However this must be carried on at plaintiff's risk and expense, under such safeguards for the protection and indemnification of defendant and its stockholders, as the trial chancellor sees fit to impose.

█ Section VI doesn't attempt to cover how defendant's income tax should be figured. The matter of allowances, credits and other

items of deduction entering into the determination of defendant's net taxable income derived from the rent is not mentioned. It would be most unlikely that at the time the sublease was made the details entering into the computation of future taxes of different types could be foreseen (or understood). We think it proper in granting full relief that the chancellor recognized the silence of the lease on this subject and set up in his decree certain practices as to deductions to be followed in the future. He found that plaintiff need pay not more than the actual amount charged against defendant for income taxes upon defendant's income derived from the $50,000.00 annual rent computed after defendant had taken the deductions authorized in connection with the income from the sublease.

The chancellor computed the taxes for the years 1936 and 1937 and ordered plaintiff to reimburse defendant for them. He also ordered plaintiff to pay defendant the taxes for 1938, 1939 and 1940 [870] which had accrued since the trial. All this he had the right to do as the ''price of his decree'' denying the forfeiture. See State ex rel. Couplin v. Hostetter, 344 Mo. 770, 129 S. W. (2d) 1; Priest v. Oehler, 328 Mo. 590, 41 S. W. (2d) 783. Plaintiff's objection to this part of the decree is bottomed on those cases which hold that a petition may not be amended to set up a cause of action which had not accrued at the time the original petition was filed, such as for installments of rent coming due after the filing of the petition. Lennox v. Vandalia Coal Co., 158 Mo. 473, 59 S. W. 242. Such rule is not apposite in any equity case under the conditions we find here, and this is especially so in view of plaintiff's attempt to tender into court the amounts in default.

In finding for defendant the trial chancellor found for the right party. His decree is affirmed. The cause is remanded for such further proceedings in harmony herewith as may be necessary for the settlement of the amounts due as additional rent, the trial court to retain jurisdiction for such further orders as it may determine necessary to carry out the terms of the decree.

The decree in the second suit, where a temporary restraining order was issued by a second division of the circuit court after the first division of the same court has already acquired jurisdiction of the case, dismissing the case because the second division had no jurisdiction is likewise affirmed. State ex rel. Banner Loan Co. v. Landwehr, 324 Mo. 1142, 27 S. W. (2d) 25; O'Malley v. Lamb, 342 Mo. 171, 113 S. W. (2d) 810.

Affirmed and remanded. All concur except *Gantt, J.*, absent.

## ON MOTION FOR REHEARING.

DOUGLAS, C. J.—Plaintiff, through additional distinguished counsel, vigorously contends we have incorrectly analyzed Section VI wherein we rule it covers taxes levied ''upon the income of the lessor

represented by or derived from said rental." We took the quoted words from Section VI itself. Stripping away the alternatives and other language not pertinent to the issue before us, Section VI imposes on plaintiff the obligation for taxes thus: "Such sum of money as, under any law, shall be required to be paid because of the sum of the rentals received by lessor, by way. of tax upon the income of the lessor represented by or derived from said rental, or by way of any other tax levied in the exercise .of the power of taxation in any of its aspects without exception on account of the nature or extent of any such tax."

Plaintiff asserts Section VI comprehends but one tax only— one in the nature of a "rentals" tax "irrespective of the form which such tax in collection might assume" and that an income tax upon the person of lessor based on its income even though such income is derived from the rental is in nowise included. To the writer the language of Section VI seems clearly to cover an income tax but be- cause of divergent judicial views on this issue we have held it to be ambiguous.

The principle that an ambiguous contract will be given the con- struction placed upon it by the contracting parties has been expressed and followed many times in this State. See 7 West's Mo. Digest, "Con- tracts" Key number 170. In our principal opinion we have pointed out the Federman sublease, which supplied the form of the clause in the present sublease, was construed to cover income taxes of the same nature as the present federal income tax. The parties have given the present sublease the same construction and have done so annually for eleven years. Plaintiff has reimbursed defendant for income taxes throughout that period. When this sublease was entered into the present form of income tax was in force, the withhold- ing tax charged directly against rentals had been repealed.

The principle of practical construction arising from the conduct of the parties is not subservient to the rule that an ambiguous lease is to be construed most strongly in favor of the lessee. Such rule of construction is generally recognized but has received only scant support in this State. Riesenberg v. Realty Co., 214 Mo. App. 43, 258 S. W. 23, supra; Amzi Realty & Building Co. v. Kelly (Mo. App.), 49 S. W. (2d) 214. The application of such rule is limited. In Pere Marquette R. Co. v. Wabash R. Co., 141 Mich. 215, 104 N. W. 650 the court said: "Counsel for the Wabash Company say that there is no ambiguity in the terms of this lease, and that, if it is susceptible of two constructions, the one most favorable to the lessee must pre- vail. We recognize that as a rule of construction within proper limits, but we think it should not be invoked [871] where the intention of the parties is determinable from the language used, when examined in the light of surrounding conditions and circumstances." Nor may it be invoked, in our opinion, where the meaning of an ambiguous contract has already been settled by the construction of the parties

themselves. Under such circumstances the party who did not employ the ambiguous language is in no position to complain of being misled by it.

Ascertaining the true meaning of the sublease through the construction of the parties and acting pursuant to such construction is not a modification of the terms of the sublease. A provision in the sublease forbidding any modification of it except in writing duly executed and acknowledged is not thereby violated. Likewise it does not violate the rule expressed in Warren v. A. B. Mayer Mfg. Co., 161 Mo. 112, 61 S. W. 644 that subsequent verbal changes or modifications are not allowed to vary the rights of the parties under a written contract which the Statute of Frauds requires to be in writing. In that case the court refused to enforce a verbal arrangement for a substantial variation of a contract required to be in writing.

Plaintiff's motion for rehearing is overruled. All concur except Gantt, J., absent.