**Gladys HEIFNER, Plaintiff-Respondent,**

v.

**Donald F. SPARKS d/b/a Sparks Funeral Home, Defendant-Appellant.**

No. 31866.

St. Louis Court of Appeals.

Missouri.

May 18, 1965.

Rehearing Denied June 21, 1965.

Dearing, Richeson, Weier & Roberts, J. Richard Roberts, Hillsboro, for defendant-appellant.

Thurman, Nixon & Smith, Robert Lee Smith, Hillsboro, for plaintiff-respondent.

OLDHAM, Special Judge.

■ This is an appeal by the defendant Sparks (the parties are hereinafter referred to by their designations in the court below) from a judgment in the sum of $10,000.00 rendered upon the verdict of a jury in the Circuit Court of Washington County, Missouri. Washington County is within the territorial district of this court and the amount involved is less than $15,000.00, therefore jurisdiction of this appeal is in the St. Louis Court of Appeals.

On August 4, 1962, plaintiff Gladys Heifner's husband, Albert Heifner, was found unconscious on the ground near a pond, which he had been cleaning, and plaintiff and her son, Gerald Heifner, placed him in the family car and drove him into Potosi, where defendant's ambulance was engaged to take him to the Bonne Terre Hospital. Mr. Heifner was placed on a cot in the ambulance and plaintiff sat next to the cot on a jump seat, while Gerald Heifner rode in the front seat with defendant's employee driver, Golden Fryman. At the time Mr. Heifner was placed in the ambulance, plaintiff told the driver to get to the hospital as quickly as possible so that the trip was made at emergency speeds as high as 65 to 70 miles per hour and with the red light on the ambulance operating and the siren sounding upon occasion.

At a place about one mile from Bonne Terre there was a bridge which was so built as to create a rather sharp hump, or bump, in the road. The ambulance crossed the bridge at a speed of from 40 to 50 miles per hour and struck the hump in such manner as to throw plaintiff out of the jump seat so that her head struck the top of the ambulance and her husband was thrown 18 inches to 2 feet above the cot. When plaintiff came down she struck the seat, or some hard object, injuring her back to the extent that she "blacked out" and upon arrival at the hospital had to be assisted out of the ambulance and was admitted to the hospital. The plaintiff's medical evidence was to the effect that plaintiff suffered compression fractures of the third and fourth lumbar vertebrae and she was hospitalized for two weeks at Bonne Terre. Upon her release from this hospital she wore a brace for her back until October 5, 1962, when she was sent to Barnes Hospital for examination and treatment and was hospitalized for five days and in June of 1963, she was again hospitalized at Barnes for a period of fifteen days. Upon her release from Barnes the first time another lighter brace was prescribed which she was wearing at the time of trial. At the trial plaintiff testified she still suffered pain in the low back which at times radiated down into her legs. She was unable to carry out her normal household duties, nor to do the walking, bending, etc. necessary in gardening, picking berries, canning foods, etc. as she had done immediate-

ly before the accident. Reference to other facts in the transcript will be made later as necessary.

Plaintiff's petition charged defendant with negligence in the operation of the ambulance in several respects, including operation at a high and excessive rate of speed, which is the only allegation of negligence submitted to the jury.

Defendant's answer denied that defendant was negligent in any respect charged in the petition and alleged that plaintiff was guilty of contributory negligence, in that plaintiff "failed to use the ordinary degree of care as a passenger in an ambulance responding to an emergency situation in that plaintiff failed to make any effort or attempt to brace herself, hold on or balance herself in the seat," and in certain other respects not in issue here.

Defendant's motion for new trial sets out a number of alleged errors on the part of the trial judge which we have considered but which are not briefed and in which we find no merit. Defendant has briefed and we will consider only the alleged error of the court in refusing to give either defendant's Instruction A or B concerning contributory negligence on the part of the plaintiff.

The case was submitted to the jury under plaintiff's Instruction P–1 which was the conventional excessive speed instruction, (the language of which was approved in Hausherr v. Kansas City Public Service Co., Mo.App., 268 S.W.2d 433 and Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496) and defendant's Instruction D–4 which was the conventional converse of P–1.

Defendant concedes in his brief that while the exact status of the plaintiff as a guest or paying passenger was not determined, defendant's driver was required to use the highest degree of care in the operation of the ambulance, regardless of plaintiff's precise status and that plaintiff was required to use ordinary, or reasonable care for her own safety. Defendant admits plaintiff was not contributorily negligent as a matter of law but contends that under the circum-

stances in evidence in this case it was a question for the jury as to whether or not plaintiff used ordinary or reasonable care for her own safety and that this question should have been submitted to the jury by either Instruction A or B.

■■ It is well established that defendant has the right to have his theory of the case submitted to the jury by instructions which are within the pleadings and evidence and which are correct in both form and substance, and that the court may not be convicted of error in refusing to give an instruction which is not substantially correct in both form and substance, even if the giving of the instruction would not be reversible error, Orloff v. Fondaw, Mo.App., 315 S.W.2d 430, and cases cited therein.

Defendant's Instruction A was as follows:

"The Court instructs the jury that Gladys Heifner, on the occasion mentioned in the evidence, was required to exercise that degree of care that an ordinary prudent person under the same or similar circumstances would exercise for her own safety and could not entrust herself absolutely to the driver of the vehicle in which she was riding.

"The Court further instructs the jury that if you find and believe from the evidence that the plaintiff Gladys Heifner was, on the occasion mentioned in the evidence, riding on the jump seat, described in the evidence, in the rear of the ambulance driven by Golden Fryman; and

"If you further find that on the occasion in question Mr. Heifner was ill and being transported to the Bonne Terre Hospital by said ambulance; and

"If you further find that on the occasion in question plaintiff Gladys Heifner was not holding onto her seat or any other object and was not bracing herself in any manner in an attempt to maintain her balance on said seat and

if you further find that such failure, if she did so fail, was negligent and that such negligence, if any, directly caused or directly contributed to cause the accident mentioned in the evidence, if any, and plaintiff's injuries, if any, then your verdict shall be in favor of defendant Donald F. Sparks and against plaintiff Gladys Heifner and this is true without regard to whether or not you find the defendant Donald F. Sparks negligent under other instructions of the Court."

Defendant's Instruction B was a duplicate of Instruction A except for the addition of the following paragraph, which would be the fourth paragraph of said Instruction B:

"If you further find that as the said ambulance traveled from Potosi to the bridge mentioned in the evidence, the back of the ambulance swayed and bounced; and"

█ The first paragraph of this instruction requires plaintiff to exercise that degree of care that an ordinary prudent person, under the circumstances, would exercise for her own safety, *"and (plaintiff) could not entrust herself absolutely to the driver of the vehicle in which she was riding. * * *"* (Emphasis supplied.) This paragraph has been held erroneous in Happy v. Blanton, Mo., 303 S.W.2d 633, 638, as imposing an unrealistic duty on a mere passenger of maintaining a lookout and warning a driver of dangerous situations she could have seen, even though the driver was exercising the highest degree of care and there was no indication he would not continue to do so.

In this connection it should be pointed out that plaintiff, in this case, was riding in the back of the ambulance and could see out only with difficulty, if at all, and that, in spite of the hilly and curvy conditions of the road, plaintiff had not had difficulty remaining in her seat prior to the accident, and that the testimony of all three persons in the ambulance, including defendant's driver, was to the effect that there was no material bouncing, swaying or jolting of the ambulance, and that the ambulance was making a normal emergency run. Nothing occurred to warn plaintiff that the driver was not using due care or to cause her to hold on or brace herself or to warn the driver of any dangers apparent to her. We agree with the statement of the Court in the Happy case that (loc. cit. 638), " * * * This is not a correct statement of the legal duty of a guest passenger in an automobile. Only mischief and confusion could result from a requirement that in the exercise of ordinary care every guest passenger must at all times be a 'back seat driver.' "

█ It is common knowledge that passengers do largely rely upon the driver who has the exclusive control of a motor vehicle and under ordinary circumstances have the right so to do. As was said in Ketcham v. Thomas, Mo., 283 S.W.2d 642, 645:

" * * * 'In the absence of visible lack of caution of the driver or known imminence of danger, a guest may ordinarily rely upon a driver who has exclusive control of the vehicle', Toburen v. Carter, supra, 273 S.W.2d 161 at page 164, and it is a matter of common knowledge that under ordinary circumstances such occupants do largely rely upon the driver, who has the exclusive control and management of the vehicle, and who is exercising the required degree of care. * * *"

The only evidence which could possibly be construed as establishing that there was any unusual bouncing, swaying or jolting of the ambulance during this trip came from the defendant (who was not present in the ambulance) as follows:

"Q. (Mr. Roberts) Is there anyplace other than this bridge where you had jolts, if you are going at an emergency speed?

"A. (Mr. Sparks) Yes.

"Mr. Roberts: That's all."

Even if this testimony is admissible, it does not state what happened on this particular trip but is only a general statement that there was a place or places where the ambulance, if not operated properly, could have jolted. From the testimony of those present the ambulance did not jolt, therefore the driver must have avoided such place or places mentioned by defendant Sparks. There being no evidence indicating that there was a lack of caution on the part of defendant driver, apparent to plaintiff, the above mentioned part of both instructions is held to be erroneous, Happy v. Blanton, supra, 303 S.W.2d loc. cit. 638, and cases there cited.

 Having found that the first paragraph of each instruction imposed an improper duty upon the plaintiff and thus, that it was not error to refuse said instructions, (Orloff v. Fondaw, supra) we do not feel it necessary to consider the other assignments of error in said instructions extensively. We think it sufficient to say that both instructions omit the submission of prior warning to plaintiff, which, in this case, we consider an essential element to be found by the jury before plaintiff can be held to be contributorily negligent, Ketcham v. Thomas, 283 S.W.2d loc.cit. 647, supra. We further think that even if the instruction had properly submitted this issue, the court could not be convicted of error in refusing the instruction for the reason that it was not supported by the evidence as pointed out above.

Defendant insists that such prior warning is not an essential element to be found by the jury and cites Shanklin v. St. Louis Public Service Co., Mo.App., 370 S.W.2d 649. We think the holding in the Shanklin case is not in point in this connection because the language of the instruction there involved was different from those submitted by defendant in this case.

 Further, neither instruction required a finding by the jury that the plaintiff could have prevented herself from being thrown from her seat by holding on or bracing herself and thus have avoided injury. The instructions simply told the jury that, if plaintiff did not hold on or brace herself, she could be found guilty of contributory negligence without requiring a finding that such negligence contributed to plaintiff's injuries, which, in effect, left the matter open to surmise and conjecture. We think this is an omission of an essential element of a contributory negligence instruction. Shanklin v. St. Louis Public Service Co., supra; Voyles v. Columbia Terminals Co., Mo. App., 239 S.W.2d 559; Triplett v. Beeler, Mo., 268 S.W.2d 814, loc. cit. 818.

Finding no error in the refusal of the court to give defendant's Instructions A and B or in the matters presented by defendant's motion for new trial and not briefed, the judgment is affirmed.

WOLFE, P. J., and ANDERSON, J., concur.