LATIMER MOTORS, LTD., Appellant,

v.

McINTOSH MOTORS, INC., et al., Respondents.

No. KCD 26522.

Missouri Court of Appeals, Kansas City District.

Aug. 5, 1974.

Donald L. Mason, Sheridan, Sanders, Carr, White & Mason, Kansas City, for appellant.

James S. Cottingham, W. Dudley Leonard, Cottingham, Williamson, Gibson & Leonard, Independence, for respondents.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

SHANGLER, Judge.

The plaintiff sued to recover for damage to its premises from a fire caused by defendants who occupied as lessees. The petition in four counts was tried to the court, and the court entered judgment for defendants on the express pleading of each count, but awarded plaintiff $800 for the cost of removal of debris, an issue tried by consent of the parties under Count IV. The judgment was premised on findings of fact and conclusions of law entered by the court. At the close of plaintiff's evidence, the court sustained the motion for judgment of defendant Mike DeSouza, and no error is assigned as to this ruling.

The premises were leased by plaintiffs to defendant for use as an automobile dealership. The fire originated in a separate room of the premises used to clean cosmoline from new cars. The room contained a gas water heater, and some 12 feet away,

an "Easy Car Wash" machine. The machine was used to remove the grease preservative from new cars by a spray of kerosene followed by a rinse of detergent. It is not disputed that the fire resulted when, while an employee of defendants was cleaning cosmoline from a car by means of the "Easy Car Wash" machine, either the hose split or the nozzle separated from the hose, causing kerosene to spray upon the gas water heater and ignite. The fire left the building a complete loss. On June 29, 1963, eight days following the fire, plaintiff received a notice of termination of lease by defendants to be effective that day. Then on July 1, 1963, defendants notified plaintiff by letter of surrender of the premises as of that day and agreed, further, to remove all debris from the premises in accordance with the lease. The plaintiff responded to defendant by letter that plaintiff would continue to hold defendants liable for the monthly rental of $1,000 as provided in the lease, that the attempted termination was ineffective, and further that plaintiff was willing to comply with Section 12 of the lease to repair the premises as soon as defendants removed the debris.

The defendants removed from the premises in July of 1963. The clearing of the debris was completed on July 30, 1963. The premises were not re-let until November, 1965. At the time of the fire, defendants had made all payments of monthly rental due, but made none thereafter.

The demise from plaintiff to defendant was by written lease which, as relevant, provided:

2. INSURANCE: LESSEE shall comply with all insurance regulations so the lowest fire, lightning, explosion, extended coverage and liability insurance rates may be obtained; and nothing shall be done or kept in or on the premises by LESSEE which will cause an increase in the premium of any of such insurance on the premises or on any building of which the premises are a part or on any content located therein, over the rate usually obtained for the proper use of the premises permitted by this lease or which will cause cancellation of any such insurance.

\* \* \* \* \* \*

7. LESSOR'S LIABILITY: All merchandise and property in or about the premises shall be at LESSEE'S sole risk, and LESSEE does hereby, now and forever, release LESSOR from any claims for damages, howsoever caused.

\* \* \* \* \* \*

10. PUBLIC REQUIREMENTS: *LESSEE shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the premises or use thereof, and save LESSOR harmless from expense or damage resulting from failure to do so.*

11. CARE OF PREMISES: Subject to obligations of LESSOR set forth in paragraph 6 hereof, LESSEE shall take good care of the premises and appurtenances thereto and keep them in good repair, free from filth, overloading, danger of fire, explosion or any nuisance, and return the same to LESSOR at the expiration of this lease, in as good condition as when received by LESSEE, usual wear and use, *damage by fire*, explosion, providential means or any other casualty *excepted*. \* \* \*

12. DAMAGE BY CASUALTY: *If,* during the term hereof or previous thereto, the premises, or any *building* of which the premises are a part, shall *suffer damage by fire*, explosion, providential means or any other casualty *to the extent that the premises or building cannot reasonably be repaired within sixty days after date of such damage,* or to such an extent that under the then existing laws, order, ordinances, or other public requirements the same cannot be repaired to substantially the same form and with substantially the same materials as before such damage, *then the term hereby created shall terminate* as of the

date of such damage and rent shall cease as of the date of such damage, with proportionate refund of any prepayment, on condition LESSEE forthwith surrenders the premises to LESSOR. If, in such event, this lease is not so terminated, then LESSOR shall repair the premises as soon as practicable with due diligence, placing the same in as good condition as they were just before such damage, and rent shall abate pro rata and in proportion to untenantability of the premises from the time of such damage until restoration of the premises by LESSOR.

\* \* \* \* \* \*

21. LESSOR is to pay all real estate taxes and to carry fire and extended coverage insurance on the building.

On this appeal plaintiff assigns three errors to the trial court: (1) In the finding that the acts of defendants were not willful and wanton and therefore defendants were exonerated from liability under Section 11 of the lease; (2) In the holding that defendants were not liable to plaintiff for indemnity under Section 10 of the lease; (3) In the finding that the premises could not be restored within sixty days of the fire and that the lease was thereby terminated under Section 12 of the lease.

Plaintiff sought recovery under Count I of the petition for damages to its reversion on the theory that the loss was the result of willful, wanton and reckless acts of the defendants and therefore not exonerated from liability under Section 11 of the lease. The trial court found that the use by defendants of kerosene under pressure as a cleaning agent to remove cosmoline from new automobiles was in violation of Section 1105 of the Ordinances of the City of Independence and was not in accordance with the safe practice for the use of such substance recommended by the National Board of Fire Underwriters. The court found also that the defendants failed to exercise due diligence and ordinary care in the use of the kerosene spray, but that defendants were not culpable of willful and wanton misconduct. On the authority of

Rock Springs Realty, Inc. v. Waid, 392 S. W.2d 270 (Mo.1965), the court concluded that the lessees were exonerated from liability under Section 11 of the lease.

In that case, the court was confronted with an action by a lessor for damages caused by a fire alleged to have been negligently caused by the lessees. The lease provided [l. c. 271]:

At the expiration of this lease, Tenant will surrender keys and peaceable possession of the leased premises to Landlord or Agent, in good condition, *loss by fire*, casualty, Providence and deterioration excepted. (Emphasis added.)

Construing the lease, the court noted that the lease assumed the lessor would maintain fire insurance on the building, and the lessees were expressly forbidden from any conduct which would cause a cancellation of the fire insurance or increase the rates, that the lessees were required to comply with all insurance regulations, and that the lessor would terminate the lease if he was unable to obtain fire insurance by reason of the occupancy of the lessees. The court concluded [l. c. 278] that the intention of the parties was that the fire insurance was to be carried by the lessor for the benefit of both parties and that the exemption clause "loss by fire" included all fires "except those which, generally speaking, would be classed as arson".

The defendants contend that *Rock Springs* controls the issue here and that they are exonerated from liability under the lease. The plaintiff maintains, however, that this decision does not intend that such an exculpatory redelivery clause will exempt a lessee from liability for damages caused by willful and wanton acts and that the language of the decision, that arson only is not exculpated, was not necessary to the determination of that action which was brought on the theory of res ipsa loquitur. The theory of the action notwithstanding, however, it is the sense of *Rock Springs* that a commercial lessee would reasonably expect that the exculpatory

clause there considered [which was in the substantial form of Section 11] relieved him of liability for all fires which could normally be insured against. The court declared the rule for construction of such leases that, in the absence of a stipulation to the contrary [1. c. 277]:

[W]here the parties agree for full insurance coverage of property the agreement is for the benefit of both, and the insurance proceeds will be held to constitute a satisfaction of any claims for loss by one party against the other.

The plaintiff cites us to encyclopaedic statements to the effect that fires caused by willful and wanton acts are not included within the coverage of such exculpatory redelivery clauses. We need not determine the limits of coverage of such exculpatory clauses, however, if the ruling of the trial court that defendants were not guilty of willful and wanton acts can be sustained. The plaintiff finds conclusive proof of such conduct in the violation of the ordinance respecting the use of flammable materials and in the evidence of a witness to the effect that on the day of the fire he had made repairs on the kerosene hose, and that on that morning or within a few days before, he had informed the shop foreman that the hose needed to be replaced. The witness admitted, however, that he could not recall when he had notified the foreman that the hose had to be replaced.

█ Plaintiff refers to several decisions which distinguish between mere negligence and willful and wanton conduct. Thomasson v. Winsett, 310 S.W.2d 33 (Mo.App. 1958) was an action for wrongful death brought by a mother who alleged the defendant driver was willfully and wantonly negligent in entrusting his car to her unlicensed minor son in violation of statute. The court noted that while violation of a statute proves negligence, it does not necessarily prove wantonness. The court made an extensive review of Missouri decisions defining willful and wanton conduct and concluded [1. c. 38]:

[I]n order to fasten guilt as a willful, wanton, and reckless act there must be a tint, scent, and aura of *knowledge,* either actual or so strongly suggested by the circumstances that it would be apparent to a reasonable man, that injury will be the probable result following from the act performed.

It was the element of defendant's actual notice of a dangerous condition and failure for several weeks to make repairs upon which the court in Reel v. Consolidated Inv. Co., 236 S.W. 43 (Mo.1921) rested approval of a submission of willful and wanton conduct. In this case before us, however, the premises had been inspected by the Independence Fire Department on May 15, 1961 and then on May 28, 1962, and both times the condition of the premises had been noted on the reports as "fair"; there is no evidence that on either occasion defendants were in violation of prescribed fire safety procedures. In the absence of convincing testimony that defendants were on notice as to the defective condition of the hose, the continued use of which amounted to conscious disregard for the probable consequences [Watkins v. Spears Ship By Truck, 72 S.W.2d 818, 820 (Mo. App.1934)], and in view of the reports of the fire inspection authorities which found no breach of the safety conditions of the premises, the finding of the trial court that the fire was not caused by willful and wanton acts of defendants is not clearly erroneous. Accordingly, we do not reach a determination of whether the exculpatory clause of Section 11 of the lease exempts only fires negligently caused.

█ The plaintiff next contends that it was error to deny the indemnity pleaded under Count III of the petition. Under Section 10 of the lease agreement, defendants covenanted to comply with all laws, ordinances and public requirements affecting the premises and to "save Lessor harmless from expense or damage resulting

from failure to do so". When Section 10 of the lease is read in conjunction with the exculpatory clause of Section 11, the meaning and effect to be given Section 10 is not readily clear. As we have determined, Rock Springs Realty, Inc. v. Waid, supra, requires—in the absence of a specific stipulation for a contrary result—that we construe Section 11 to exonerate the lessee from liability for damages occasioned by fire whether or not the result of the negligence of the lessee. The question arises whether Section 10 is intended as a specific exception to the exemption provisions of Section 11, whereby the lessee is held liable over to the lessor for fires caused by negligence where the lessee was found also to be in violation of laws or public requirements respecting the premises. The plaintiff contends that this is what Section 10 was intended by the parties to do.

■ A contract free from ambiguity is to be construed as written. Language is ambiguous when it is susceptible of opposite meanings. When a contract is not clear, it is to be construed as it is understood and acted upon by the parties. J. E. Blank v. Lennox Land Co., 351 Mo. 932, 174 S.W.2d 862, 868 [8] (banc 1943). We have noted the ambiguity between Section 10 of the lease whereby the defendants covenanted to save plaintiff harmless from damage resulting from their failure to comply with all laws, ordinances and public requirements affecting the premises and Section 11 which exonerates defendants from liability for damages occasioned by negligent fire. The court found that plaintiff sustained damage of $107,000 for which he received insurance benefits.

There was no evidence as to the intention of the parties when the lease was executed. It is logical to assume, however, that when the parties negotiated the typewritten clause that lessor was to pay for fire insurance coverage [Section 21], the rental payments were so adjusted that the lessees actually bore the cost of the coverage. Rock Springs Realty, Inc. v. Waid, supra, 392 S.W.2d 1. c. 278. Viewed in this context, Section 10 as a part of the form lease raises an additional ambiguity. To adopt the construction plaintiff seeks would be to require the lessee to bear the cost of insurance, accord the benefit of the proceeds to the lessor, yet render the lessee liable for the full damages occasioned by his violation of law. It is not what a reasonable lessee would expect.

The reasoned authorities which have considered the question do not support the position plaintiff asserts. Similar provisions were construed in Puget Inv. Co. v. Wenck, 36 Wash.2d 817, 221 P.2d 459 (1950). The lease provided [l. c. 465]:

(6) Lessee shall at all times keep and use said premises in accordance with applicable laws and ordinances and in accordance with applicable directions, rules and regulations of public officials and departments, at the sole expense of lessee . . . Lessee shall pay all damages caused by the failure of lessee to perform any of the foregoing obligations.

The lease also contained a redelivery clause which exempted the lessee from liability for fires not caused by his negligence. The court construed the provision to render the lessee liable to lessor for any expense in the nature of [l. c. 465] "fines, abatement proceedings or the like" occasioned by lessee's violation of law, but that such lease provision could not be construed as an affirmative obligation to repair, alter or improve. Rather, [l. c. 466]

[i]t is intended only to place upon the lessee rather than the lessor the responsibility for making any such repairs, alterations or improvements which the lessee finds necessary in order to enjoy the use of the premises; to indemnify the lessor for any expenses resulting directly from unlawful use of the premises; and to provide the lessor with a basis for requiring the lessee to cease any unlawful activity which may occasion expense for the lessor or damage to the reversion.

To like effect is Zeibig v. Pfeiffer Chemical Co., 150 Mo.App. 482, 131 S.W. 131, 133 (1910), where the lessee was held not liable for the expense of constructing a fire escape required by the city under a clause in which he covenanted to repair and comply with public requirements, which the court construed as a restrictive covenant not to use the premises in an unlawful manner.

■■ As a general principle, where the lessee covenants to comply with public requirements at his own expense, he is liable for incidental repairs or replacements, but not for substantial or structural repairs required by public authorities unless the intention of the lessee to assume such an obligation is clear or unless the repairs or improvements are required because of the particular use the lessee makes of the premises. Annotation, Leases—Government Ordered Repairs, 22 A.L.R.3d 521, 525. Had the lessor intended that the exculpatory redelivery clause be limited to that lessees would remain liable in damages resulting from the failure to comply with public requirements, that intention could have been made clear by specific language to that effect in Section 11. [We note, as did the court in Rock Springs Realty, Inc. v. Waid, supra, 392 S.W.2d 1. c. 272, that this is a "landlord's lease" on a standard form which provides extensive protections to the lessor.] As the lease provisions now stand, the lessee was obligated to make only those incidental repairs and suffer any fines as required or imposed under public requirements. The judgment of the trial court which denied relief to plaintiff on Count III is sustained.

■ The final assignment of error is the finding of the trial court on the claim for rent in Count IV of the petition. The plaintiff made claim for $26,333.33, the accrued rent under the lease from September 15, 1963 [sixty days after the fire] to December 10, 1965 [when the premises were re-let]. Section 12 of the lease provided that if the building suffers damage by fire or other casualty to the extent "the building cannot reasonably be *repaired* within sixty days after the date of such damage", the term of the lease terminates as of the date of the damage. (Emphasis ours.) The trial court found that the premises could not reasonably be repaired or restored within sixty days following the fire and that even if restoration could be accomplished within this time, the lease was terminated under Section 12 nonetheless because the building was completely destroyed and could not be "repaired". The plaintiff contends there was ample evidence before the court to prove its claim that the premises could have been *restored* to their original condition within sixty days, and that any distinctions between "damage" and "destruction" or "repair" and "rebuild" are not significant and do not bear on the issue. We do not reach this semantical conundrum because the evidence supports the finding of the trial court that the premises could be neither *repaired, restored,* nor *rebuilt* within sixty days. The court found, and the testimony clearly disclosed, that the building was a complete loss. The dispute between the parties was whether the premises could be *rebuilt* within the time allowed: the expert for plaintiff asserted the professional judgment that it could be done, and that of the defendant that it could not. The weight and credibility of the testimony was for the trial judge. We will not disturb his finding that the premises could not be rebuilt or restored within sixty days. Accordingly, we need not consider what distinctions "repair" and "rebuild" may import within the meaning of Section 12 of the lease.

The judgment is affirmed.

All concur.